UNITED STATES of America

v.

John DOE.

Cr. A. No. CR 93–XXX–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 19, 1994.

704

Alan H. Yamamoto, Alexandria, VA, for plaintiff.

Helen Fahey, U.S. Atty. and Justin W. Williams, Asst. U.S. Atty., Alexandria, VA, for defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

■ This case presents the novel question whether a defendant may benefit from a motion for reduction of sentence under Fed. R.Crim.P. 35(b), or from a motion for departure under United States Sentencing Commission, *Guidelines Manual,* § 5K1.1 (Nov. 1994),[1] when someone other than the defendant provides at least part of the "substantial assistance" upon which the motion rests.[2] For the reasons elaborated in this Memoran-

---

1. Although the government filed the instant motion under Rule 35(b) and not USSG § 5K1.1, the two provisions are essentially similar and reflect identical policy rationales. *See, e.g., United States v. Perez,* 955 F.2d 34, 35 (10th Cir. 1992); *United States v. Doe,* 940 F.2d 199, 203 n. 7 (7th Cir.1991). Indeed, Rule 35(b) directs courts to consider the reduction "in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to [28 U.S.C. § 994]." The two provisions differ only with respect to timing. *See, e.g., United States v. Martin,* 25 F.3d 211, 215–16 (4th Cir.1994) (noting that USSG § 5K1.1 allows sentencing judge to sentence the defendant below the Guidelines range for substantial assistance rendered *prior* to sentencing, while Rule 35(b) permits a subsequent reduction in a defendant's sentence for substantial assistance provided *after* sentencing). Thus, the Court's resolution of the issue here

presented applies equally to motions under § 5K1.1.

2. The novelty of the question stems not from the rarity of the circumstances giving rise to it (because these circumstances are not especially rare) but rather from the apparent assumption of courts and litigants that the answer to the question is too obvious to merit attention. In researching this issue, the government inquired of every United States Attorney office nationwide whether any attorney had filed a Rule 35(b) or § 5K1.1 motion based upon assistance volunteered by a third party. The government received 14 responses, which disclosed that in at least 11 instances, courts have granted substantial assistance motions based on surrogate assistance. However, there is no written or published opinion regarding the issue, nor does it appear that the matter has ever been litigated.

dum Opinion, the Court holds that in certain limited circumstances, such surrogate assistance may form the basis of a Rule 35(b) reduction or a § 5K1.1 departure.

## I.

John Doe[3] is currently incarcerated in a federal penitentiary for conspiracy to possess with intent to distribute, and conspiracy to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. § 846. With his co-conspirators, Doe had hired couriers to transport large quantities of heroin concealed in their digestive tracts from Columbia to the United States, where the conspirators then offered the drug for sale. Following an undercover sting operation, Doe was arrested and ultimately pled guilty to the conspiracy offense. The Court sentenced Doe to 120 months incarceration, which is the mandatory minimum sentence prescribed by statute for the offense.

Less than a year later, the government filed a motion under Rule 35(b) to reduce Doe's sentence based upon his substantial assistance in the investigation and prosecution of another heroin distributor ("Mr. X"). Examination of the government's supporting memorandum, however, revealed that it was Doe's *son*, not solely Doe himself, who contributed much of the information to the government that led to Mr. X's arrest. More specifically, it appears that Doe originally possessed some information regarding Mr. X's drug dealing activities, but Doe feared it was not of the quality or quantity generally required for a Rule 35(b) motion. To bolster his position in this regard, Doe, while incarcerated, enlisted the help of his son to gather more details regarding Mr. X's criminal activities. *Doe related all that he knew regarding* Mr. X to his son. Armed with this information, the son probed further into the activities of Mr. X and, then, to prompt a Rule 35(b) motion for his father, reported his findings to the government in his new role as a registered DEA informant. The government relied on the information gathered by Doe's son to arrest and successfully prosecute Mr. X. In light of this assistance, the government filed the instant Rule 35(b) motion for reduction of Doe's sentence.

During a hearing on the motion, the Court, *sua sponte,* raised the issue whether the United States Sentencing Guidelines permit the reduction of a defendant's sentence based upon the substantial assistance of a third party. Not surprisingly, neither the government (who brought the motion) nor Doe (who stands to benefit from it) viewed the surrogate assistance as problematic. Yet, because the Rule's language on its face presented the issue, the Court directed the parties to research and brief the matter. The parties complied, and the matter is now ripe for disposition.

## II.

Analysis properly begins with the language of Rule 35(b), which provides, in pertinent part, that courts, on timely motion by the government, may reduce a sentence "to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense." Fed.R.Crim.P. 35(b). This language, although it appears otherwise at first, is, on closer inspection, infected with ambiguity. That the qualifying assistance must be "defendant's" does not define how the defendant may come by the information he uses, what sources or methods he may use, or whose aid he may enlist to obtain the information. For example, few would doubt that the phrase "defendant's . . . substantial assistance" appropriately includes instances where the material the defendant provides to the government is made up, in part, of information obtained by a family member or friend acting at the defendant's behest. By the same token, few would contend that the Rule could be triggered by information, no matter how helpful, when that information is supplied by a spouse or other family member of a defendant, who himself deliberately refuses to divulge information. Similarly, few would quarrel with the notion that the Rule cannot be successfully invoked by a defen-

---

**3.** Anonymity for Defendant is appropriate given the significant risks attendant to cooperating with the government in this case.

dant who, wishing to cooperate, but without the information or the means to cooperate, purchases information or aid from unrelated entrepreneurial substantial assistance sellers. At a minimum, the Rule's language excludes these last two examples and requires that the defendant be involved in some fashion in rendering the substantial assistance, though the nature and degree of that involvement, and the extent to which surrogate cooperation may play a role, are matters left for the courts to elucidate. That is the task undertaken here, a task guided by the Rule's language and purpose. *See Paxman v. Campbell,* 612 F.2d 848, 854 (4th Cir.1980) (potential ambiguity in Fed.R.Civ.P. 23(b)(2) construed by reference to the rule's language and purpose).

■ Before its amendment in 1984,[4] Rule 35(b) provided courts with substantial discretion to revisit and reduce a defendant's sentence within 120 days of sentencing.[5] Then, as part of the Sentencing Reform Act of 1984, which aimed to bring about greater uniformity in federal sentencing, Congress amended Rule 35(b) to permit courts to reduce a defendant's sentence solely on the ground of a defendant's subsequent assistance to the government. Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 215, 98 Stat.1987, 2014–17. Importantly, Congress expressly directed courts to apply amended Rule 35(b) in accordance with the

policies and guidelines developed by the newly formed United States Sentencing Commission. *Id.* Consistent with this instruction, analysis here focuses on USSG § 5K1.1,[6] which, aside from timing, is essentially similar to Rule 35(b).[7]

■ Section 5K1.1 provides a list of suggested factors that courts may consider in determining the appropriate sentence departure.[8] These factors make clear that the primary purpose of § 5K1.1, and hence of Rule 35(b), is to increase the percentage of criminals who are successfully prosecuted for their crimes. And, in this regard, § 5K1.1 and Rule 35(b) reflect both a recognition that defendants are often in a unique position to provide information regarding other individuals' illegal conduct, as well as a realization that the government will ordinarily be able to tap that information only if it can provide defendants with some significant incentive to cooperate.

■ It is equally clear that the purpose of a reduced sentence is *not* to reward the defendant for his recognition of the wrongfulness of his conduct or for his newly found desire to make amends for his conduct. The commentary to § 5K1.1 makes this clear, for it explicitly distinguishes the purpose of a departure for substantial assistance from that of a reduction for acceptance of respon-

---

**4.** Although the amendment to Rule 35(b) was part of the Sentencing Reform Act of 1984, the amendment did not take effect until November 1, 1987, the effective date of the Guidelines. *See* Fed.R.Crim.P. 35(b), editorial notes. *See also, United States v. Francois,* 889 F.2d 1341, 1345 (4th Cir.1989).

**5.** For the text of prior Rule 35(b), *see* Fed. R.Crim.P. 35(b), "Rule Applicable to Offenses Committed Prior to Nov. 1, 1987."

**6.** Section 5K1.1 reads, in pertinent part:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
USSG § 5K1.1, p.s. This section comports with Congress' command that the Commission:
assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by

statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.
28 U.S.C. § 994(n). *See also* 18 U.S.C. 3553(e).

**7.** *See supra* note 1.

**8.** The suggested factors are:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.
USSG § 5K1.1(a), p.s.

sibility under § 3E1.1. The former is aimed solely at aiding the government's efforts to "investigat[e] and prosecut[e] ... [the] criminal activities [of] persons other than the defendant, while [the latter] is directed to the defendant's affirmative recognition of responsibility for his own conduct." USSG § 5K1.1, comment. (n. 2).[9] It is plain, then, that the central goal of § 5K1.1 is to encourage defendants to provide effective assistance in the government's investigation and prosecution efforts, not to reward a defendant's good intentions.

This policy distinction is significant to the issue whether a defendant may benefit from surrogate assistance. It supports the argument, advanced here by the parties, that the defendant himself need not be the sole provider of the substantial assistance but may benefit as well from assistance provided by a third party on his behalf. Because Rule 35(b) and § 5K1.1 use the lure of a reduced sentence simply as a mechanism to achieve greater prosecutorial success, those provisions are arguably satisfied whenever the government receives substantial assistance on behalf of a defendant, regardless of whether the defendant alone provides the assistance. Given this, at least some instances of surrogate assistance would seem to fit comfortably within the contours of Rule 35(b) and § 5K1.1. Yet, only a moment's reflection confirms that not all instances of surrogate assistance fall within the boundaries of the Rule.

 Two boundaries may be derived from the provisions themselves. The first boundary stems from the text, which refers to a *"defendant's ... substantial assistance."*

Fed.R.Crim.P. 35(b) (emphasis added). This language indicates that a defendant must, at a minimum, play some role in instigating, requesting, providing, or directing the assistance. Thus, Rule 35(b) is not triggered by surrogate assistance when the defendant himself refuses to cooperate. The second boundary may be gleaned from the Rule's policy to aid the government's investigation and prosecution efforts. Under this limitation, the surrogate assistance qualifies only if the government would not have received the assistance absent the defendant's participation. In other words, a defendant can claim the benefit of surrogate assistance only in those circumstances where, but for the defendant's efforts, the surrogate would not have come forward or assisted.[10] This requirement accords with the general principle, discussed earlier, that a defendant must actually further the government's investigatory and prosecutorial efforts,[11] be it through his own cooperation or by recruiting that of a friend or relative. In short, the touchstone of Rule 35(b) and § 5K1.1 is that the defendant play some role in bringing to the government new and useful information relating to other individuals' criminal acts.

 Were the analysis to end here, however, some undesirable results might obtain. For instance, it would be consistent with the policy and text of Rule 35(b) and § 5K1.1 to permit a defendant to pay a surrogate to provide substantial assistance. Purchasing surrogate assistance would satisfy the condition that the defendant play some role in instigating, requesting, providing, or directing the assistance, and it would certain-

---

9. Also worth noting is that the Commission amended § 5K1.1 in 1989. Section 5K1.1 previously required that the defendant "made a good faith effort to provide" substantial assistance. Through the amendment, the Commission replaced this phrase with the single word "provided", noting that a mere willingness to provide substantial assistance is insufficient. *See* USSG Appendix C, amendment 290. Thus, even a cooperative defendant who possesses vast amounts of information may not benefit from § 5K1.1 or Rule 35(b) if the government has already learned that information from another source.

10. Thus, for example, a surrogate's voluntary testimony in a criminal proceeding cannot con-

stitute substantial assistance for the defendant if the government could have obtained the same testimony through subpoena, (assuming, of course, that the government would have *known* to subpoena the witness), or if the surrogate would have volunteered with the same quality and quantity of assistance independently of the defendant's efforts.

11. This is not to suggest that a defendant's assistance, by proxy or otherwise, need always lead to the actual prosecution of another individual. There may well be instances where a defendant or his surrogate provides information that, while useful and new to the government, does not result in the prosecution of any individual.

ly further the policy of increasing successful criminal investigations and prosecutions. Thus, someone with the financial resources of Ross Perot or Donald Trump could provide the government with an abundance of assistance simply by opening his wallet. Indeed, to take the hypothetical to the extreme, small businesses might spring up to develop and provide substantial assistance on behalf of a defendant-client for a price. Yet, to permit such transactions would be to ignore the overriding principle of equal justice for all persons in the criminal justice system, regardless of economic circumstance. It would be fundamentally unjust and would controvert basic notions of equal protection to establish a sentencing scheme that permitted, in essence, a wealthy person to purchase a lighter sentence than that of an indigent. *Cf. Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891 (1956) (stating that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has"); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); *Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Maher v. Roe,* 432 U.S. 464, 471 n. 6, 97 S.Ct. 2376, 2381 n. 6, 53 L.Ed.2d 484 (1977). The desire for better and more efficient criminal prosecutions must give way in this context. Thus, it follows that another boundary confining the use of surrogate substantial assistance is that the assistance must be provided gratuitously and from a non-remunerative desire to help the defendant.[12]

■ Finally, it is worth emphasizing that Rule 35(b) and § 5K1.1 vest courts with substantial discretion regarding whether, and in what circumstances, to grant the motion. *See* USSG § 5K1.1 (commentary background). It is the exercise of this discretion, as well as that of the government in deciding whether to bring the motion, that must operate to weed out impermissible uses of surrogate assistance. For instance, it is possible that, in an effort to obtain useful information to relate to the government, a defendant's friend or relative might actually foment or create criminal activity outside the scope of government undercover operations and beyond the scrutiny of government agents.[13] Such activity would clearly fall outside the boundaries of Rule 35(b) and § 5K1.1.

In general, courts and prosecutors must be vigilant not to reward or encourage improper applications of surrogate assistance. It is anticipated that surrogate assistance will remain a relatively infrequent source of Rule 35(b) and § 5K1.1 motions and will be confined generally to those cases, similar to the one presented here, where a close friend or relative works with and on behalf of the defendant in providing the assistance.

■ In summary, some, but not all, species of surrogate assistance will trigger Rule 35(b) and § 5K1.1. Specifically, Rule 35(b) and § 5K1.1 motions may be based on assistance rendered by a defendant's surrogate when (1) the defendant plays some role in instigating, requesting, providing, or directing the assistance; (2) the government would not have received the assistance but for the defendant's participation; (3) the assistance is rendered gratuitously; and (4) the court finds that no other circumstances weigh against rewarding the assistance.

Because the instant case meets these criteria, the surrogate assistance at issue here is not an impediment to granting Rule 35(b) relief. The Court will dispose of the motion in a separate Order.

---

12. Almost invariably, then, the assistance will be provided by a relative or close friend of the defendant. This requirement does not exclude, however, those instances where a defendant reimburses a surrogate for reasonable expenses incurred in providing the assistance, such as transportation costs. Nor does it exclude those circumstances where the *government* makes a payment to the surrogate. Rather, the intent is to exclude those cases where a defendant provides some form of compensation to a surrogate as an inducement for the assistance.

13. Of course, there is also a risk that the defendant himself could arrange for criminal activity, but this risk is lower given that the defendant is often incarcerated.