**UNITED STATES of America,**
**Plaintiff,**

v.

**Danny Lamar ABERCROMBIE,**
**Defendant.**

**No. CRIM.A. 3:99–00022.**

United States District Court,
S.D. West Virginia,
Huntington Division.

July 21, 1999.

Ray M. Shepard, Huntington, WV, for plaintiff.

Mark F. Underwood, Huntington, WV, for defendant.

## MEMORANDUM OPINION

GOODWIN, District Judge.

Pending before the Court is the Government's motion to depart from the United States Sentencing Guidelines (Guidelines or U.S.S.G.). The Court reads the motion as one for a downward departure based upon the defendant's substantial assistance pursuant to U.S.S.G. § 5K1.1 and alternatively as one for a downward departure based upon the substantial assistance rendered by another person on the defendant's behalf pursuant to U.S.S.G. § 5K2.0.[1] The Court **FINDS** that the assistance rendered by the defendant, if any, was not substantial and therefore does not justify a departure pursuant to Section 5K1.1. However, the Court **FINDS** that another person has rendered substantial assistance to the Government in the prosecution of other individuals and **HOLDS** that such assistance is a proper basis for a departure from the Guidelines.

## I.

The defendant Danny Lamar Abercrombie was born on February 15, 1963 in Leeds, Alabama, just outside of Birmingham. He never knew his father and was raised along with his two sisters by his mother, the daughter of a West Virginia coal miner.

Abercrombie moved to McDowell County, West Virginia as a youth and was graduated from high school there in 1982. He then attended four years of college at Marshall University in Huntington, West Virginia on a football scholarship, but did not receive a degree. He received credit for only 79 of 98 hours attempted. He apparently has lived in Huntington since college.

About five years ago, the defendant met a Huntington woman named Julie Poore. The pair developed a relationship and eventually had a child together. Their daughter is now two years old. Abercrombie reports that he does not live with Ms. Poore and his daughter, but visits both regularly and is very serious about taking care of his parental responsibilities.

On November 14, 1998, Huntington police officers responded to a call concerning an armed robbery. The officers noticed a man (Abercrombie) who matched the description of the robbery suspect and at-

---

1. The Court interprets the Government's oral comments made at the initial sentencing hearing as a motion brought on these alternative grounds.

tempted to stop and question him. He ran. The officers caught up with Abercrombie and tried to handcuff him. He fought with the officers, striking them with his elbows and legs in the struggle. The officers then tried to subdue Abercrombie with pepper spray, but could not. One officer finally grabbed his baton and used it on Abercrombie, but he managed to escape and again began to run. Eventually, the officers were able to catch up with him and take him into custody.

After subduing Abercrombie, police searched him and found 6.27 grams of cocaine powder, 4.74 grams of cocaine base, and 4.26 grams of marijuana on his person, along with $89 in cash. Abercrombie admitted that he had been selling drugs shortly before being stopped by police and that he had been selling drugs for about a year. He was subsequently charged in a Cabell County Magistrate Court with possession of controlled substances with intent to distribute, fleeing, and battery on a police officer.

Following his arrest, Abercrombie contacted Ms. Poore to tell her of his arrest. He also told her that he had buried drug proceeds in the amount of $7000 in her back yard. He asked her to locate the money, uncover it, and hire an attorney. She complied with his request, using the money to hire attorney Mark Underwood. Underwood secured the release of the defendant, pending entry of his plea, and was able to broker a plea agreement for his client with the United States Attorney's Office.

## II.

Before entering his guilty plea, Abercrombie attempted to assist the Government in prosecuting other individuals. According to Assistant United States Attorney Ray Shepard, Abercrombie provided truthful information regarding the criminal activities of others from his arrest until entering his plea. Abercrombie also attempted to execute controlled purchases of cocaine on two separate occasions, but in each instance was unsuccessful.

Once it appeared to the Government that Abercrombie would not be able to provide sufficient information to justify a substantial assistance motion, the Government filed a motion to schedule a plea hearing. Abercrombie plead guilty to a one count information on March 12, 1999. Because Abercrombie was adjudged guilty of possession of cocaine and cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), the Bail Reform Act of 1984 required that he be detained.[2] Abercrombie had no more information concerning the criminal activities of individuals and detention effectively ended his opportunity personally to earn a substantial assistance departure.

Facing such circumstances, the defendant once again enlisted the aid of his girlfriend, Ms. Poore. He asked her to cooperate with the United States on his behalf. That she did, beginning in April 1999, in return for no personal compensation and exclusively for the benefit of Abercrombie. Between April 15, 1999 and May 15 1999, Ms. Poore successfully made four controlled purchases of cocaine from two separate suspected drug dealers. One

2. The Bail Reform Act of 1984 requires that defendants convicted of an offense carrying a sentence of 10 years or more under the Controlled Substances Act be detained after entry of a guilty plea. Under the Act, the Court must detain a defendant after the entry of a guilty plea to such an offense unless: (1)(a) the Government recommends that no sentence of imprisonment be imposed or (b) that exceptional circumstances exist for not detaining him; and (2) there is clear and convincing evidence that he is not likely to flee and not likely to pose a danger to any other person or to the community if released. The Government rarely recommends that no sentence be imposed, so the Bail Reform Act generally requires the defendant's detention unless he clears the dual hurdles of proving that exceptional circumstances exist for not detaining him and there is clear and convincing evidence that he is not likely to flee and not likely to pose a danger to any other person or to the community if released.

of those dealers is a career offender, who is also believed to have possessed a firearm during the purchases and who threatened to use the gun to avoid going back to prison. Additionally, Ms. Poore's assistance led to the seizure of approximately eleven ounces of cocaine that the career offender was transporting into West Virginia. As a result, the Government filed a motion to depart from the Guidelines on Abercrombie's behalf pursuant to U.S.S.G. § 5K1.1.

## III.

■ Abercrombie's sentencing hearing was set down for July 6, 1999. At that hearing, the Court considered the motion for a substantial assistance departure and heard a proffer of evidence in support of the motion. The issue before the Court was whether Section 5K1.1 of the Guidelines allows for a departure based upon substantial assistance provided by someone other than the defendant. If not, the relevant issue became whether such a departure is justified on other grounds. The Court heard argument and determined that the parties should research and brief the issue further. The attorney for the Government complied with the request. The defendant did not.[3]

### A.

Pre-sentencing motions for substantial assistance departures are filed pursuant to Section 5K1.1 of the Guidelines. That section provides in pertinent part:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S. SENTENCING GUIDELINES MANUAL § 5K1.1 (1998).

The section is promulgated pursuant to Congress's directive that the Sentencing Commission:

> assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account the defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C. § 994(n) (1993); *see* 18 U.S.C. § 3553(e).

As both the Guidelines and the enabling statute explicitly reveal, a departure from the Guidelines based upon the substantial assistance is available if and only if the assistance is provided by the defendant. *See United States v. Doe,* 870 F.Supp. 702, 707 (E.D.Va.1994) ("In short, the touchstone of Rule 35(b) and § 5K1.1 is that the defendant play some role in bringing to the government new and useful information relating to other individual's criminal acts."); *see also United States v. Bush,* 896 F.Supp. 424, 427 (E.D.Pa.1995) ("If a defendant plays no role in eliciting information useful to the Government, then she has done nothing to 'assist[ ]' the Government, substantially or otherwise."). Courts are to consider several factors when determining whether and how much to depart. U.S.S.G. § 5K1.1. Those factors, which

---

**3.** A district court cannot depart upward on a ground not previously identified as a potential ground for departure either in the presentence report or in a prehearing submission by the Government, unless the court first gives notice to the parties that it is considering such grounds for a potential departure. *See Burns v. United States,* 501 U.S. 129, 138, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). The Fourth Circuit has held that the *Burns* notice requirement applies equally to potential grounds for downward departures. *See United States v. Maddox,* 48 F.3d 791, 799 (4th Cir.1995). To the extent it was necessary, the Court gave the required notice during the July 6 sentencing hearing before that hearing was continued. The Court further gave both parties an ample opportunity to submit briefs regarding the proposed grounds for departure. The failure of the defendant to submit a brief does not effect the validity of that notice.

also are framed in terms of personal assistance by the defendant, include the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

*Id.*

No appellate court has addressed the issue of whether assistance rendered by a third person may justify a substantial assistance motion. The seminal decision on the subject is *United States v. Doe,* a thoughtful opinion written by Judge T.S. Ellis of the United States District Court for the Eastern District of Virginia. *See Doe,* 870 F.Supp. at 708. That opinion sets forth a four-part test. *Id.*

The defendant in *Doe* was a convicted heroin trafficker who possessed information about another heroin trafficker, but who feared that his information would not be sufficiently helpful to earn him a reduced sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure. The defendant relayed all of the information about the other trafficker to his son and convinced his son to gather further information that might lead to the trafficker's arrest and conviction. At the *Doe* defendant's urging, the son registered as a DEA informant and successfully assisted the government in prosecuting the other trafficker. The government rewarded the *Doe* defendant and his son by filing a Rule 35(b) motion to reduce the *Doe* defendant's sentence.

Judge Ellis faced an issue similar to the first one presented here: whether the defendant's assistance was sufficiently substantial to earn the reduced sentence. Noting that most of the assistance was actually rendered by the defendant's son, Judge Ellis set forth the following test to determine whether a defendant's assistance is substantial under such circumstances:

Specifically, Rule 35(b) and § 5K1.1 motions may be based on assistance rendered by a defendant's surrogate when (1) the defendant plays some role in instigating, requesting, providing, or directing the assistance; (2) the government would not have received the assistance but for the defendant's participation; (3) the assistance is rendered gratuitously; and (4) the court finds that no other circumstances weigh against rewarding the assistance.

*Doe,* 870 F.Supp. at 708.

In applying the test, Judge Ellis found that the assistance rendered by the *Doe* defendant and by his son met all four elements. *Id.*

A few months later, a district court in the Eastern District of Pennsylvania applied the *Doe* test in a case—similar to this one—where the defendant hoping to benefit from a reduced sentence did not render assistance herself, but instead sought to benefit from the assistance rendered by her paramour. *See United States v. Bush,* 896 F.Supp. 424, 426–27 (E.D.Pa.1995). There, however, the court denied the motion, finding that the defendant did not play a substantial role in rendering the assistance given. Notably, the court applied the *Doe* test without expressly adopting it. *Id.* at 428. Rather, the *Bush* court "agree[d] with Judge Ellis to the extent that if a defendant played a material role in 'instigating, requesting, providing, or directing' assistance from another, then the defendant may benefit from the surrogate's assistance." *Id.*

The *Bush* court appeared to express concern that a court might grant a motion

to reduce a sentence based upon surrogate assistance without concentrating on the assistance actually rendered by the defendant. *See id.* at 427. Consistent with that concern, the *Bush* court noted,

> The first element of the *Doe* test ensures fidelity to the text of the rule. Rule 35(b) only allows a court to reward a 'defendant's ... substantial assistance.' If a defendant plays no role in eliciting information useful to the Government, then she has done nothing to 'assist[ ]' the Government, substantially or otherwise.

*Id.*

## B.

This Court agrees that a defendant may receive the benefit of a Rule 35(b) or Section 5K1.1 motion due to assistance rendered in part by third persons. However, the Court shares the concerns expressed in *Bush* and declines to adopt in toto the test articulated in *Doe.* The *Doe* test's first element requires only that the defendant have played "some role" in garnering the assistance in order to qualify for a Rule 35(b) or Section 5K1.1 motion. This Court concludes that Section 5K1.1 does not permit a downward departure where the only "substantial" assistance is rendered by a person other than the defendant.

This conclusion is bolstered by the result in *Bush. See Bush,* 896 F.Supp. at 427. There, the defendant's paramour, who was also incarcerated, had refused to cooperate with the government until Bush was jailed. *Id.* Only then did the paramour contact Bush. *Id.* During that contact, the paramour informed Bush that he was cooperating and that he was doing so in order to get Bush out of jail. *Id.* Bush's response to the paramour was to instruct him: "Do what you have to do." *Id.* Her assent to the paramour's decision to assist could easily be found to comprise "some role" in the deal. However, reducing sentences based upon mere assent and a lenient "but for" test appears to be inconsistent with the text of Rule 35(b) and Section 5K1.1.

## C.

 For the foregoing reasons and after considering the five factors established by the Sentencing Commission as relevant for consideration when deciding a motion for substantial assistance, the Court **FINDS** that the assistance provided by Abercrombie does not justify the granting of a Section 5K1.1 substantial assistance motion. Abercrombie may have played "some role" in bringing information to the Government and Ms. Poore certainly would not have come forward "but for" Abercrombie's plight. Nevertheless, the assistance personally provided by Abercrombie was not "substantial" in its own right. The Court therefore **FINDS** that Abercrombie has not provided substantial assistance sufficient to justify a Section 5K1.1 departure. The motion of the government to depart on those grounds is **DENIED.**

## IV.

### A.

 The Court finds, however, that sentencing courts have authority to grant Government motions for downward departures for defendants when the substantial assistance is provided by third parties. The authority to grant the motion stems not from Section 5K1.1, but from 18 U.S.C. § 3553(b).

Section 3553(b) provides in pertinent part:

> The court shall impose a sentence of the kind, and within the [appropriate Guidelines] range ... unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines,

policy statements, and official commentary of the Sentencing Commission.

18 U.S.C. § 3553(b).

When determining whether a departure is justified pursuant to § 3553(b), this Court is guided by the United States Supreme Court's recent decision in *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). *See United States v. Terry,* 142 F.3d 702, 705–06 (4th Cir. 1999) (applying *Koon* procedure); *United States v. Barber,* 119 F.3d 276 (4th Cir. 1997) (en banc) (same). *Koon* and its progeny instruct district courts to identify precise bases for proposed departures and to examine the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission to determine whether the proposed grounds for departure have already been considered by the Commission. If the proposed grounds were considered and forbidden as a basis for departure, then "the sentencing court cannot use it as a basis for departure." *Terry,* 142 F.3d at 705–06 (quoting *Koon,* 518 U.S. at 95, 116 S.Ct. 2035). If the proposed basis for departure is one upon which the Sentencing Commission encourages departure, and if that factor is not taken into account by the applicable guideline, then the district court "may exercise its discretion and depart on that basis." *Id.* If the proposed grounds are not mentioned by the Commission, then the district court "must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." *Id.*

The rendering of substantial assistance by a defendant is an encouraged basis for departure under the Guidelines. *See* U.S.S.G. § 5K1.1. The rendering of substantial assistance by a third party for the purpose of benefitting a defendant, however, is not mentioned. Therefore, the Court must look to the structure and theory of the individual guidelines and the Guidelines taken as a whole to decide whether such third party assistance is sufficient to take this case out of the Guidelines' heartland. In so doing, it is patent that the Sentencing Commission has recognized society's interest in obtaining information useful to the prosecution of perpetrators acts, even where that involves bargaining with criminal defendants or convicts. The desirability of obtaining information through such bargaining is explicitly recognized in Section 5K1.1 and Rule 35, which permit a prosecutor to offer motions for more lenient sentences in return for valuable information. It would be arbitrary to allow the prosecutor to bargain only with criminal defendants and convicts.[4] Rather, to the extent that bargains with criminal defendants and convicts are encouraged, bargaining with third parties should also be encouraged. Though the results are not always pretty, such bargaining takes place every day. A husband and wife are arrested for cultivating marijuana. The prosecutor persuades the husband to plead guilty and to provide information about his other drug contacts in return for leniency toward his wife.

Any prosecutor worth his salt would trade a motion for downward departure benefitting the perpetrator of a relatively insignificant crime in exchange for information leading to the successful prosecution of a terrorist who had bombed an embassy. It is often the case that persons, bereft of any impulse even vaguely related to good citizenship, will come for-

---

4. The Court recognizes that its reading of the law places surrogate assistance departures in the realm of a Section 5K2.0 departure. The Court further recognizes that the placement has the unfortunate effect of cutting off a defendant's ability to receive such a departure after the defendant has been sentenced. This is because the only avenue Congress has provided a defendant to reduce his sentence through cooperation runs through Rule 35(b), and that rule is not applicable unless the defendant has personally provided substantial assistance. Though that result may seem anomalous, courts are duty bound to interpret the law as it appears to be, not to make the law appear as it is not.

ward with information of substantial value because they want to trade it for leniency for themselves. The policy implications are not markedly different when the beneficiary of the bargain is someone for whom the provider cares deeply.

Nothing in the structure or theory of the Guidelines mitigates against recognizing such third party assistance as grounds for a motion for downward departure. After all, the benefits inherent in the receipt of substantial assistance are identical, regardless of the identity of the provider of such assistance. The Court therefore concludes that third party assistance as described herein is a mitigating circumstance of a kind not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines and which should result in a sentence different from that provided for under the Guidelines.

### C.

■ The Court **ADOPTS** the following test for use in determining whether or not a downward departure is warranted where a third party has provided substantial assistance in the investigation or prosecution of another person who has committed an offense:

First, the court must consider whether the assistance rendered by the third party—had the third party been a defendant—was sufficient to justify a downward departure pursuant to U.S.S.G. § 5K1.1. In considering this element, the court is to weigh heavily the Government's evaluation of the usefulness of the assistance rendered.

Second, the court must consider whether the assistance provided by the third party could have been received absent the Government's ability to offer a motion for departure as an incentive. The court is to weigh heavily the Government's evaluation

of the evidence with respect to this element as well.

Third, the court must consider whether the assistance was rendered gratuitously.

Finally, the court must consider whether any other circumstances weigh against rewarding the assistance.[5]

### V.

The Court granted the motion on the record at the sentencing hearing held contemporaneously with the filing of this Memorandum Opinion and departed downward by three levels.

The Court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and Judge Goodwin.

---

5. Whether the Government has moved for the departure may be significant, if not dispositive. Whether a motion from the Government is required before the departure is given need

not be decided by the Court on these facts. Here, the Government moved for the departure.