ROSE, District Judge.
Defendant-Appellant John Hatton raises three issues subsequent to his trial and sentencing for robbing a bank and robbing a smoke shop: whether' the trial court violated his substantial rights when it denied his motion for separate trials; wheth *575 er the trial court committed plain error by-listing facts for the jury to consider in determining the existence of a nexus to interstate commerce; and whether the trial court committed procedural error in concluding that it could not consider Hat-ton’s spouse’s cooperation in determining whether to grant a variance at sentencing. Because none of these issues warrants reversal in the context of Hatton’s case, the appeal will be denied.
On Friday, October 21, 2011, at about 6:00 p.m., John Hatton attempted to rob the M & I Smoke Shop, a small convenience store in Louisville. (Doc. 230, at PageID# 1596-1599, 1616.) Holding a revolver, Hatton ordered the proprietor, “Give me all your money or I’ll kill you....” (Id. at PageID# 1598-99.) The shop owner wrested the revolver away from him. (Id. at PageID# 1600-01.) When Hatton tried to flee, the owner shot him in the leg. (Id.) The entire incident was captured by the store’s video security cameras. (Id. at PageID# 1607-08.) Hatton was held on state criminal charges. (Doc. 231, at PageID# 1804, 1738.)
Three months earlier, in July 2011, Louisville Metro Police Department had begun investigating a series of armed robberies. (Doc. 156, PageID# 977-78). Eight armed robberies — some by a white female, some by a male at a location the woman had robbed, and some by a white female accompanied by a male — left the police with a suspicion that all the robberies were committed by a robbery ring connected to the white female. (Id. at Paged# 980). These robberies included a September 23, 2011 bank robbery by a white female and a white male a month before Hatton’s arrest and a January 23, 2012 robbery of the same bank by a white female and a black male three months after Hatton’s arrest.
Around January 28, 2012, a few days after the second bank robbery fitting the pattern of the white-female led ring, the police received a tip from a parent whose child went to school with the child of a white female named Jillian Wojciechowski. (Id. at PageID# 948-49). Specifically, the parent overheard Wojciechowski’s daughter say that her mother, Wojciechowski, had been on the news for robbing a bank. (Doc. 259, PageID# 2015). The police identified the getaway car from the January 2012 bank robbery as Wojciechowski’s. (Doc. 156, PageID# 950-51). Thus, Wojciechowski became the primary suspect in the robbery ring, along with her live-in boyfriend, Dean Ridge. (Doc. 231, Pa-geID# 1766). Over the next several months, the police conducted surveillance of Ridge and Wojciechowski. (Id. at Pa-geID# 1767). In March 2012, police photographed Wojciechowski in the company of two black males, Joshua Ewing and Vincent Coleman. (Doc. 156, PageID# 900, 907; # 953-56).
Police learned of Wojciechowski’s and Ridge’s ties to Coleman when they tracked Wojciechowski’s car to an overnight stay at Coleman’s wife’s home. (Id. at PageID# 955-56). Coleman sold Wojcie-chowski and Ridge drugs and guns that were used in various armed robberies. (Doc. 156, PageID# 874-76).
Meanwhile, with her husband in jail, Hatton’s wife, Sara, took action. In mid-April 2012, she called the Louisville Metro Police offering to help build a drug trafficking case against an acquaintance of hers, Jillian Wojciechowski. (Doc. 259, Pa-gelD# 2017-19.) Sara Hatton said she was volunteering her help to qualify her husband for a shorter sentence for the smoke shop offense. (Id. at Pa-gelD# 2018-19.) Sara Hatton gave no indication that her husband had requested *576 or in any way procured her cooperation with the authorities. (Id.)
Investigators had Sara Hatton record telephone conversations with Wojciechow-ski. (Doe. 231, PagelD# 1767-71.) Sara Hatton next recorded Wojciechowski selling her drugs and discussing a bank robbery. (Doc. 230, at PagelD# 1689; see also doc. 248, at PagelD# 1914-16.)
Days after Sara Hatton’s undercover meeting, investigators arrested Wojcie-chowski and Ridge and searched their house. (Doc. 231, at PagelD# 1771-73.) Wojciechowski submitted to questioning by detectives, and she confessed her role in the bank robberies. (Id. at Pa-gelD# 1777-80; Doc. 230, at Pa-gelD# 1682-88.)
During that first interrogation, Wojcie-chowski told detectives she had an accomplice in the first bank robbery: John Hat-ton. (Doc. 231, at PagelD# 1782-83.) Wojciechowski later accused Sara Hatton of complicity as well. (Doc. 230, at Pa-gelD# 1672-73.) Hatton and Ridge had met each other about six months before the September 23, 2011 bank robbery. (Doc. 230, at # 1636). The night before the September 23 bank robbery, the Hat-tons went to Wojciechowski’s and Ridge’s home to spend the night. (Id. at Pa-gelD# 1638). The four of them discussed robbing Your Community Bank, where Ridge had an account. (Id. at Pa-gelD# 1634,1638,1672).
Sara Hatton had worked in banking and gave advice on how to avoid dye packs, bait bills, and silent alarms that would be triggered by removing money from teller drawers. (Doc. 230, at PageID#1641-43; 1673-74). Sara explained getting money from the vault could avoid those alarms. (Id. at PagelD# 1642). Sara, who was pregnant, was not going along with the others on the robbery, but participated in the planning by providing her advice. (Id. at PagelD# 1673). The next day, Ridge drove Hatton and Wojciechowski to the Your Community Bank in Hatton’s Jeep Cherokee. (Id. at PagelD# 1635, 1670). Ridge sat in the car as Hatton and Wojcie-chowski went into the bank. (Id. at # 1646,1674,1676).
Multiple bank surveillance cameras captured the robbery on video. (Doc. 229, at PagelD# 1658-61). While Hatton wore a ski mask, the jurors could thus compare the male bank robber’s stature and few visible features of Hatton’s.
The robbers got a total of $120,721.62. (Id. at # 1564). Ridge drove Hatton and Wojciechowski to an empty house he-was painting and split the money, one-half for Hatton, and one-half for Wojciechowski. (Doc. 230, PagelD# 1646-47).
Wojciechowski and Ridge were both taken into custody on May 16, 2012. Wojcie-chowski said that the then-pregnant Sara Hatton had stayed at Wojciechowski’s house during the robbery, and as soon as the crime was done and the robbers had split the money, Hatton rushed back to Wojciechowski’s house, picked up his about-to-deliver wife, and sped to the hospital. (Id. at PagelD# 1680.) Sara was admitted to the maternity ward by mid-afternoon (id.), and delivered a baby boy shortly after midnight. (Doc. 221, at Pa-gelD# 1458.) Ridge made similar allegations about the Hattons. (Id. at Pa-gelD# 1638-1642.) Sara Hatton was killed in an automobile accident in August 2012. (Doc. 229, PagelD# 1514.)
That same month, Wojciechowski was charged in the initial federal indictment for twice robbing the Your Community Bank branch. (Doc. 1, PagelD# 1-3). In March 2013, the grand jury returned a Superseding Indictment, adding bank robbery and firearms charges against both Hatton and Joshua Ewing for the Septem *577 ber 2011 and January 2012 bank robberies. (Doc. 22, PagelD# 46-50). The Superseding Indictment also added a charge against Hatton for the October 2011 robbery of the ,M & I Smoke Shop and a related firearm charge. (Doc. 22, PagelD# 47-48). In May, 2013, once the investigation had identified the various participants in the robbery ring, the federal grand jury returned a Second Superseding Indictment adding a conspiracy charge against Wo-jciechowski, Hatton, Ridge, and Ewing for the bank robberies. (Doc. 41, Pa-gelD# 98-105). The conspiracy charge alleged that Ridge was the getaway driver in the bank robberies; that Hatton and Wo-jciechowski entered the bank on September 23, 2011, and robbed it; that Joshua Ewing was recruited for the second bank robbery because Hatton was unable to participate due to his arrest for the M & I Smoke Shop robbery; that Joshua Ewing and Wojciechowski entered the bank on January 23, 2012 and robbed it; and that the conspiracy covered the time span between September 23, 2011, and January 23, 2012. (Id. at # 98-100).
Hatton had been held in state custody for the M & I Smoke Shop robbery, but those charges were dismissed in favor of federal prosecution, and he was transferred to federal custody with the return of the Second Superseding Indictment. (Doc. 51; Doc. 172, at PagelD# 1222). Shortly before Hatton’s scheduled trial, the grand jury returned a Third Superseding Indictment that corrected the date on which Hatton robbed the M & I Smoke Shop, while retaining the bank robbery charge, both with corresponding firearms charges. (Doc. 165, at PagelD# 1171-78).
All the other defendants either agreed to plea agreements or were tried separately. (Doc. 94, at PagelD# 32; Doc. 111, at PagelD# 417). That-left Hatton as the last defendant to be tried.
The judge granted a motion to sever the conspiracy to commit bank robbery. (Doc. 257, PagelD# 1976-77). This left Hatton to be tried only on the substantive robbery and gun charges stemming from the M & I Smoke Shop and Your Community Bank robberies. (Doe. 153, PagelD# 634). On November 11, 2013, Hatton moved to sever the M & I Smoke Shop counts from the bank robbery counts “pursuant to Rule 8(a) and/or Rule 14.” (Doc. 173, Pa-gelD# 1225). Hatton asserted that the conditions for joinder under Rule 8(a) were not satisfied. He argued that “[tjhere is no logical connection between these alleged crimes.” (Id.). In a Rule 14 argument, Hatton further contended he would be highly prejudiced by the joinder, because the joinder would “preclude[] the Defendant from testifying on his own behalf as to one charge but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.” (Id. PagelD# 1225-26). On the first day of Hatton’s trial, the judge denied Hatton’s motion to sever. (Doc. 186, PagelD# 1209).
At the end of the trial, before closing arguments began, the judge completed the final jury instructions and distributed copies to counsel. (Doc. 231, at Pa-gelD# 1799-1814.) Among the instructions would be this statement about the Hobbs Act’s interstate commerce element:
In determining whether the robbery of the M & I Smoke Shop affected interstate commerce, you should consider that a portion of the goods sold by the M & I Smoke Shop are shipped from outside the state of Kentucky and sold in this state, that a portion of the proceeds of sales or goods from the M & I Smoke Shop are used to purchase additional goods that are shipped in from outside of the state of Kentucky, that payments for products sold by the M & I Smoke *578 Shop are routinely transmitted to businesses located outside the state of Kentucky, and that the M & I Smoke Shop lost sales as a result of the robbery.
(Doc. 189, at PagelD# 1281.) In closing argument, the prosecutor drew the jurors’ attention to this instruction, urging them to consider the factors the judge would list. (Doc. 231, PagelD# 1826.)
The prosecutor’s closing argument was also marked by an effort to turn Hatton’s actions in the smoke shop robbery into proof that he had committed the bank robbery. “[W]hat the defendant wants you to believe is that he’s an armed robber because his attorney told you that in his opening statement,” the prosecutor said. (Doc. 231, PagelD# 1818.) “No question about that. He is an armed robber because he went into the [M & I] Smoke Shop, he was armed' with a gun, things went bad, and he wound up getting shot while he was taking the money.” (Id.) Therefore, reasoned the prosecutor, any claim that Hatton was not an armed bank robber “doesn’t make any sense.” (Id.) The prosecutor explained:
If you are willing to risk everything, if you are willing to risk your safety, your freedom, the well-being of your family, your month-old son, .,. if you are willing to do that all for a couple hundred dollars at a smoke shop, you are going to be more than willing and more than ready to do it at a bank for a hundred thousand dollars.... If your bar is set so low that you’ll pull a gun on a business owner and take everything out of his cash register, then you will go to a bank and you’ll pull a gun ... because it takes about the same amount of time, and the take and the result and the benefit is so much greater.
(Id.) “Armed robbers are armed, robbers,” the prosecutor insisted: “It doesn’t matter ... who the money belongs to. Here’s a gun; give me the money, as simple as that.” (Id. at PagelD# 1818-19.) “If you are willing to cross that line for a couple hundred bucks,” he told the jury, “you are willing to cross-that line for a hundred thousand. There’s no question about that.” (Id. at PagelD# 1819.) The jury found Hatton guilty of both robberies and both firearm charges. (Doc. 231, at Pa-gelD# 1869.)
At sentencing, the two corresponding firearms convictions generated the greater portion of the prison term on Hat-ton’s presentence report: thirty-two years, to be served consecutively with whatever punishment was assigned for the two robberies. (Doc. 221, at Pa-gelD# 1460.) As to the two robberies, the sentencing guidelines placed the advisory punishment range at 78-97 months. (Id.). The district court reduced Hatton’s criminal history category after finding that Hatton’s criminal history category overrepresented the seriousness of his prior offenses, which consisted of several automobile-license violations, a petty theft, and a drug-possession misdemeanor. (Doc. 259, PagelD# 2022; see Doc. 221, at PagelD# 1455-57.) This reduced Hatton’s advisory range to 70-87 months. . (Doc. 259, at PagelD# 2023.)
The defense asked the district court for a variance below the advisory range under 18 U.S.C. § 3553 in consideration of the significant aid that Sara Hatton had contributed to the Government’s investigation. (Doc. 248, at PagelD# 1920-21.) The court refused to consider the request. “I think what [the defendant is] asking for is essentially a 5K downward departure,” the court said. (Doc. 259, PagelD# 2016.) “I don’t see it distinguished from the kind of departure which is within the province of the United States to move for,” the court continued. (Id.) “[Without a motion of the United States,” concluded the court, “I *579 think that I can’t consider the help of one spouse, whatever that help might have been, as lessening the sentence of the other spouse.” (Id.; see also id. at Pa-gelD# 2022.)
The court imposed a prison term of 454 months (37 years and 10 months) on December 23, 20Í4. (Doc. 252, at Pa-gelD# 1952). This appeal began with the filing of notice on December 30, 2014. (Doc. 254, at PagelD# 1961).
A. Misjoinder of Charges
Hatton first appeals the denial of his motion to sever the M & I Smoke Shop from the bank robbery counts “pursuant to Rule 8(a) and/or Rule 14.” (Doc. 173, at PagelD# 1225). A district court’s refusal to sever the charges is subject to harmless error review. See United States v. Lane, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, we may grant relief only if the error “affects substantial rights.” Id. “[A]n error involving misjoin-der ‘affects substantial rights’ and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury’s verdict.” Id. (quotation omitted). Factors which can show that misjoinder is harmless include the overwhelming evidence of guilt, the fact that limiting instructions were given to the jury, and the fact that evidence concerning the misjoined counts would have been admissible in separate trials absent joinder. Id. at 450, 106 S.Ct. 725.
Federal Rule of Criminal Procedure 8(a) allows joinder of counts in an indictment if the offenses charged “are of the same or similar character, or are based on the same act or transaction, or are connected with or constituted parts of a common scheme or plan.” Rule 8(a) is construed in favor of joinder, but failure to meet the requirements of the rule may constitute misjoinder as a matter of law. United States v. Chavis, 296 F.3d 450, 456 (6th Cir.2002). The allegations in the indictment determine whether joinder was proper. Id. “Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment.” United States v. Locklear, 631 F.3d 364, 368 (6th Cir.2011) (quoting United States v. Chavis, 296 F.3d 450, 456 (6th Cir.2002)).
Here, the allegations on the face of the indictment were of a similar, if not the same, character. The second count alleges that Wojciechowski and Hatton “did by force, violence and intimidation, take from the person and presence of another, money....” PagelD# 1173-74. The fifth count alleges that “Hatton, ... by robbery, ... did knowingly and unlawfully take money belonging to the M & I Smoke Shop, from a person ..., against his will by means of actual and threatened force, violence, and fear of immediate injury to his person.” PagelD# 1175. One charge alleges taking money “by force, violence and intimidation,” while the other alleges taking money “by means of actual and threatened force, violence, and fear of immediate injury.” The two charges are sufficiently similar to be joined in one trial.
The instant case is nearly identical to United States v. Cobb, 397 Fed.Appx. 128 (6th Cir.2010), which affirmed joinder of charges that the defendant violated the Hobbs Act and three and a half months later robbed a bank. The first count of the indictment in that case charged that “the defendant ... did unlawfully obstruct and affect commerce ... by robbery ... in that the defendant ... did unlawfully take and obtain approximately $2,640 in United States currency belonging to [a restaurant engaged in interstate commerce], from a person having lawful custody of such currency, against his will by means of actual *580 and threatened physical violence to his pei-son in furtherance of such robbery.” Indictment, United States v. Cobb, 2:07-cr-186, R. 19, PageID# 34 (S.D.Ohio Sept. 6, 2007). The second count charged that “defendant ... by force, violence and intimidation did take from the presence of an employee of Huntington National Bank, money belonging to and in the care, custody and control of [the bank], ... and, in so doing, did cause to be put in jeopardy the life of employees of [the bank] by means and use of a dangerous weapon, that is a handgun.” Id.
The opinion in United States v. Cobb focused .on evidence adduced at trial as a basis for affirming the joinder: “[i]n each robbery, Cobb approached a female employee, threatened to kill her, and brandished what appeared to be a gun. In addition, he wore similar or perhaps the same clothes.” 397 Fed.Appx. at 136. Similarities akin to those in Cobb were adduced in trial against the defendant in this case: an employee was approached, threatened with a gun, by defendant who was wearing a hoodie. The major difference was that in the bank robbery Defendant acted with others, while in the smoke shop robbery he acted alone.
Looking to the evidence adduced at trial, however, ignores the mandate to determine “[w]hether joinder was proper under Rule 8(a) ... by the allegations on the face of the indictment.” United States v. Locklear, 631 F.3d 364, 368 (6th Cir.2011) (quoting United States v. Chavis, 296 F.3d 460, 466 (6th Cir.2002)). There was no proffer to the trial judge as to whether the evidence at trial would support joinder, nor is this the practice generally. As in Cobb, the district judge looked to the face of the indictment and saw similar crimes. Joinder was proper and should not be affirmed or vacated in hindsight based upon what is learned at trial.
Finally, Defendant failed to show prejudice. Defendant’s alleged prejudice was that, with the death of his wife, no one was left to testify in support of his alibi for the bank robbery, that he was with his wife who was about to give birth. Defendant reasons that if he were to have taken the stand regarding his alibi, he would have been subject to questioning regarding the smoke shop robbery. This ignores, however, that Defendant’s only defense to the smoke shop robbery was whether he affected goods in interstate commerce, as he was filmed committing the robbery, and being shot and apprehended on premises. Any questions on that point would have only yielded what everyone in the courtroom knew: he committed the smoke shop robbery. Defendant was as- free to take the stand regarding his alibi for the bank robbery as he would have been had the two counts been tried separately.
Moreover, even if there had been error, the error was harmless, primarily because there was overwhelming evidence, and also because evidence in the misjoined trials would have been admissible in the separated trial for proof of motive. The testimony of bóth Ridge and Wojciechowski that Hatton was the male robber at the September 23, 2011 bank robbery, combined with other evidence, was overwhelming.
Because the charges in the indictment describing the smoke shop robbery and the bank robbery were similar, joining them in one trial was proper. Even if it was improper joinder, because the- evidence of each crime could have been used in each trial, any error was harmless.
B. The Hobbs Act Interstate Commerce Instruction
Next, Hatton appeals the jury instruction regarding the interstate commerce element of the Hobbs Act charge. Because Hatton did not object, our review *581 is for plain error. To succeed under plain error review, Hatton “must show that the instruction was (1) error (2) that was plain, (3) that affected substantial rights and (4) that, if uncorrected, would ‘seriously affect[ ]the fairness, integrity or public reputation of judicial proceedings.’ ” United States v. Osborne, 673 F.3d 508, 511 (6th Cir.2012)(citing United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
The Hobbs Act, 18 U.S.C. § 1951(a), provides in part that “[w]jhoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ... shall be fined ... or imprisoned_” When a robbery is of a business, to prove a Hobbs Act robbery case, the United States must prove that the defendant’s robbery had at least a de minimis effect on interstate commerce. Proof that the robbery is from a business that buys inventory from an in-state distributor, which, in turn, buys its products from out of state, meets that de minimis standard. United States v. Davis, 473 F.3d 680, 681-82 (6th Cir.2007), An attempted robbery of a business in interstate commerce is likewise prohibited under the Hobbs Act. United States v. Brown, 959 F.2d 63, 64-65, 67-68 (6th Cir.1992).
At trial, Hatton contested whether there was a nexus to interstate commerce sufficient to support the Hobbs Act charge. Hatton, however, did not object to the trial court’s instructing the jury:
In determining whether the robbery of the M & I Smoke Shop affected interstate commerce, you should consider that a portion of the goods sold by the M & I Smoke Shop are shipped from outside the state of Kentucky and sold in this state, that a portion of the proceeds of sales or goods from the M & I Smoke Shop are used to purchase additional goods that are shipped in from outside of the state of Kentucky, that payments for products sold by the M & I Smoke Shop are routinely transmitted to businesses located outside the state of Kentucky, and that the M & I Smoke Shop lost sales as a result of the robbery.
(Doc. 189, at PageID# 1281.)
It is usually error for a trial court to determine contested issues of fact for a jury. See United States v. White Horse, 807 F.2d 1426, 1430 (8th Cir.1986). However, taking a factual determination away from a jury will not automatically result in reversal. Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).
The judge’s instruction amounted to error, in that- it supplanted the jury’s fact-finding role, and that error was plain. However, Hatton must show that the forfeited error affected his substantial rights. Johnson, 520 U.S. at 467, 117 S.Ct. 1544 (materiality was factual question for jury to decide, but conviction affirmed under plain-error analysis where judge, not jury, decided whether statement to grand jury was material). The forfeited error requires reversal “only if the error seriously affect[s] the fairness, integrity or public reputation of the proceedings.” Johnson, 520 U.S. at 467, 117 S.Ct. 1544, quoted in Osborne, 673 F.3d at 513.
The proof of the- interstate-effect clearly falls within the de minimis standard. It is not a miscarriage of justice to affirm Hat-ton’s Hobbs Act conviction, even if the jury instructions were flawed,
C. Authority to Grant at Variance Based Upon Third-Party Cooperation
Finally, Hatton appeals the denial of his motion for a variance at sentencing based upon his wife’s cooperation with authori *582 ties. In his sentencing memorandum and hearing, Hatton urged the district judge to impose a downward variance in the guidelines portion of his sentence for reasons that included his wife’s “significant and unselfish assistance” to the police in their investigation. (Doc. 248, Pa-gelD# 1920-21). Hatton argued that the district judge could consider the cited grounds for a downward variance under 18 U.S.C. § 3553(a) because “the minimum Guideline punishment — 70 months— [was still] too long to comply with § 3553(a)’s directive that federal punishments be ‘sufficient, but not greater than necessary’ to satisfy the need for retribution and deterrence.” (Doc. 248, PagelD # 1917). The United States did not move for a downward departure under USSG § 5K1.1 or for a lower-than-mandatory-minimum sentence under 18 U.S.C. § 3553(e). The court declared, “Without a motion of the United States, ... I think that I can’t consider the help of one spouse, whatever that help might have been, as lessening the sentence of the other spouse.” (Id.; see also id. at PagelD# 2022.)
In reviewing sentencing under the guidelines, “[w]hen the district court misunderstands its own authority, ordinarily grounds exist warranting remanding the case for resentencing.” United States v. Kaowper, 748 F.3d 728, 743 (6th Cir.2014). But if the ermror is harmless, the defendant is not necessarily entitled to resentencing. Id.
There is not evidence that Hatton solicited his wife to cooperate. No court within the Sixth Circuit has recognized that “third-party” or “surrogate” substantial assistance warrants a substantial assistance motion under USSG § 5K1.1 or 18 U.S.C. § 3553(e), much less that a sentencing court may consider such assistance as a sentencing factor under § 3553(a). While United States v. Blue, 557 F.3d 682, 686 (6th Cir.2009), suggests § 3553(a) empowers a sentencing judge to take a defendant’s substantial assistance into account, even without a motion by the United States, Blue does not say that a sentencing court may consider unsolicited “third-party” cooperation absent a substantial-assistance motion from the United States.
Importantly, nothing in the record shows that John Hatton was in any way responsible for Sara Hatton’s cooperation with the Louisville Metro Police Department. In those cases that recognize third-party cooperation as grounds for a below-guidelines sentence, the defendant must have played “some role in instigating, requesting, providing or directing the assistance.” United States v. Lander, 900 F.Supp.2d 934, 937, 940 (N.D.Iowa 2012) (quoting United States v. Doe, 870 F.Supp. 702, 708 (E.D.Va.1994); United States v. McMillion, 528 F.Supp.2d 620, 624 (S.D.W.Va.2007)). In this case, Hatton did not instigate, request, or direct Sara Hat-ton to assist the police in any aspect of its criminal investigation.
We AFFIRM the judgment of the district court.