RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0246p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
————————————

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

　　　　　　　　　　　　　　　　　　No. 08-3668

STEPHANIE CORSMEIER,
　　　　　　　*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 06-00076-001—S. Arthur Spiegel, District Judge.

Argued: April 30, 2010

Decided and Filed: August 16, 2010

Before: MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Richard Smith-Monahan, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

　　　CLAY, J., delivered the opinion of the court, in which MARTIN, J., joined. KETHLEDGE, J. (pp. 8-10), delivered a separate dissenting opinion.

————————————

## OPINION

————————————

　　　CLAY, Circuit Judge. Defendant Stephanie Corsmeier appeals following her conviction for conspiracy to commit bank, wire and mail fraud in violation of 18 U.S.C.

1

§ 1349, three counts of bank fraud in violation of 18 U.S.C. § 1344, three counts of wire fraud in violation of 18 U.S.C. § 1343, three counts of mail fraud in violation of 18 U.S.C. § 1341, and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). For the following reasons, Defendant's conviction is **REVERSED**, and the case is **REMANDED** for a new trial.

## STATEMENT OF FACTS

Stephanie Corsmeier was indicted on June 7, 2006 along with one of her employees, Stacey Lester, who faced similar charges. All charges against Defendant and Lester stemmed from the same mortgage fraud scheme. The scheme was initiated by two mortgage brokers, Clarence Harris and Ike Bronson. As mortgage brokers, Harris or Bronson would find interested buyers for houses who did not have sufficient money to make a down payment. Harris and Bronson would agree for the buyer to purchase the house at a given price and then, in official loan documents, state a higher price. The loan application would specifically state that the buyer was paying the down payment from his or her own funds. An unknowing mortgage lender would send the mortgage loan money to Defendant's company, American Security Title ("AST"). AST would then provide a "payoff" check from the loaned funds to Harris or Bronson. Harris or Bronson would then cash the check and, after skimming some money off the top, obtain a cashier's check to be used by the buyer as the down payment. An employee of AST would serve as the closing agent and complete the United States Housing and Urban Development Settlement Statement ("HUD-1"), which would attest that the buyer had provided the down payment. Of the alleged 42 illegal transactions, roughly half were brought to AST by Harris and half by Bronson. The government charged the activities in securing loans for three separate houses as individual counts of mail fraud, wire fraud, and bank fraud.

Defendant does not deny that any of these transactions occurred but took the stand to testify that she was unaware of the fraud taking place. She testified that she believed that the loans were legitimate and that the payoffs were construction payoffs based on rehabilitation work that Harris and Bronson supposedly had done on the

houses. She believed the fraudulent HUD-1 forms were justified because the down payment came on a certified check that identified the buyer.

The government asserted in its indictment that Defendant's motivation was the legitimate fees that she charged for each closing. One week before the trial, the government stated its intention to submit evidence that Harris provided cocaine to Defendant on several occasions as proof of Defendant's motive. The district court held an evidentiary hearing prior to trial to consider the admissibility of the evidence under Federal Rule of Evidence 404(b). Harris testified at the evidentiary hearing that he had provided cocaine to Defendant twice at the AST office and two or three times in a hospitality suite at hotels during conferences. Harris further testified that the amounts provided were "a gram to a little bit over a gram." According to Harris, Defendant requested that he bring the cocaine to her office, but he brought the cocaine to the conferences on his own and provided it on those occasions to multiple individuals. Harris could not remember the "date or the year" of the two times that he provided cocaine at AST. (Evidentiary Hr. Tr. 49). No evidence was submitted indicating Bronson ever provided or used cocaine with Defendant. Following the evidentiary hearing, the district court overruled Defendant's objection and ruled that the evidence was admissible.

On May 25, 2007, the jury acquitted Lester but found Defendant guilty of all charges. On May 22, 2008, the district court sentenced Defendant to 60 months' imprisonment. Defendant then filed this timely appeal.

## DISCUSSION

Defendant asserts that she is entitled to a new trial based on the district court admitting evidence of her alleged past cocaine use pursuant to Rule 404(b).[1]   In evaluating the admissibility of Rule 404(b) evidence, the district court must determine whether there is sufficient evidence the "other acts" took place.  Next, it must determine whether those other acts are admissible for a proper purpose.  Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative. *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004).

Defendant argues that the government cannot satisfy the second and third prongs of the analysis because the cocaine evidence was used for an improper purpose and the evidence was more prejudicial than probative. The government moved for the admission of the 404(b) evidence on the theory that it was admissible to show Defendant's motive, a permissible use of "other acts" evidence. *See* Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive . . .").  It is not enough that the government alleges that the evidence is being offered for a proper purpose; the evidence must be "probative of a material issue other than character." *United States v. Bell*, 516 F.3d 432, 441 (6th Cir. 2008) (quoting *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004)).  The evidence is probative of a material issue if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or "in issue," and (3) the evidence is probative with regard to the purpose for which it is offered. *Bell*, 516 F.3d at 441-42.

---

[1]Defendant also alleges that evidence was improperly destroyed and that the government committed prosecutorial misconduct.  The destruction of evidence did not violate Defendant's constitutional rights because the district court's determination that the officer whose incompetence led to the destruction of evidence did not act in bad faith is not clearly erroneous. *See  United States v. Branch*, 537 F.3d 582, 590 (6th Cir. 2008) ("Negligence, even gross negligence on the part of the government does not constitute bad faith").  Since we remand for a new trial, we need not reach the allegations of prosecutorial misconduct.

The evidence of this occasional provision of small amounts of cocaine may not have any probative value at all. Whatever minimal probative value it may have, however, is surely outweighed by the prejudicial effect of admitting the evidence. As this Court has previously remarked, motive is defined as "'something within a person . . . that incites him to action,' or 'the consideration or object influencing a choice or prompting an action.'" *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 792 (6th Cir. 2007) (quoting Webster's Third New International Dictionary 1475 (1993)). Quite simply, the allegations made by Harris in no way suggest that his very occasional provision of small amounts of cocaine to Defendant incited Defendant to participate in the scheme or that it influenced her choice to participate in the scheme.

Defendant is accused of very significant felonies, participating in a mortgage fraud scheme at least 42 times that provided her company with $42,000 in fees. While the provision of drugs in some cases could provide the impetus for a person to participate in a separate illegal scheme, the small quantity and infrequent provision of drugs in this case compared with the size of the illegal activity is strong evidence that the drugs played no role in enticing Defendant to participate in the scheme. Defendant's company allegedly reaped at least $42,000 by closing fraudulent loans. Given the large financial gain, it seems absurd to argue that part of Defendant's motivation was the fact that she received what the government must admit was less than $500 worth of cocaine on a handful of occasions over several years.

Perhaps most importantly, Bronson and Defendant were allegedly engaged in the exact same scheme, yet no evidence exists that Bronson ever provided cocaine to Defendant, used cocaine with Defendant, or knew anything about Defendant's alleged cocaine use. At the pre-trial evidentiary hearing, Harris named people who used cocaine with Defendant and never mentioned Bronson. The government would therefore have this Court believe that Harris' very occasional provision of a modest amount of cocaine motivated Defendant to commit dozens of felonies, but Defendant committed those exact same felonies in collaboration with Bronson without the inducement of cocaine.

The only evidence indicating that the very occasional provision of drugs encouraged Defendant to participate in the scheme was Harris' own statement that he provided the drugs to "enhance the relationship." Harris' own opinion, however, says little about what was actually motivating Defendant, who allegedly consented to participate in the scheme with Bronson without any drugs being provided to her. That Harris would attribute an outsized influence to the importance of cocaine is not surprising because Harris appears to be a drug addict. While on probation for an assault conviction, Harris on multiple occasions tested positive for cocaine, and he admitted to using cocaine weekly. The fact that a drug addict believed that his provision of cocaine motivated Defendant's criminal behavior does not make the evidence probative when he provided a relatively small quantity of drugs on just a few occasions, and when Defendant proved willing to participate in the same scheme with another person without receiving any drugs.[2]

Whatever minimal probative value the cocaine evidence may have, the evidence does not satisfy the requirements of Rule 403 that its probative value not be substantially outweighed by its prejudicial effect. We acknowledge that due to "the highly discretionary nature of this balancing process, the district court's decision is afforded great deference." *Bell*, 516 F.3d at 445. Even under this deferential standard of review, the minimal, at best, probative value of Harris' provision of cocaine could not outweigh the highly prejudicial effect of telling the jury that Defendant used cocaine. "[E]vidence of a defendant's involvement in drugs is highly prejudicial." *United States v. Cummins*, 969 F.2d 223, 226 (6th Cir. 1992). The prejudicial effect was heightened in this case because Defendant had no criminal record, and apart from this testimony, was implicated at trial in no illegal behavior other than that alleged in the instant case. Instead, the government attempted to present the evidence to demonstrate that Defendant had not

---

[2]The dissent argues that the provision of cocaine must have had some impact on Defendant because otherwise "vendors and professional firms would send their clients a lot fewer sports tickets and fruit baskets around the holidays." (Dissent at 9). Presumably if these professional firms knew a competitor was receiving the *exact same* business without ever providing those perks, the firms would stop their excess spending because it would be apparent that their clients are not providing business because of the fruit baskets they received.

only participated in other illegal activity but that she had participated in other illegal activity with her alleged co-conspirator.

The cocaine evidence muddied the image of a successful businesswomen that Defendant hoped to paint. The dissent argues that the cocaine evidence is less prejudicial because she was not charged with drug use. We disagree. Illegal drug use not only indicates a propensity to use drugs but a willingness to break laws. Defendant undoubtedly participated in a fraudulent scheme; the only question is whether she did so knowingly. The cocaine evidence indicates to a jury that she was not only willing to break the law but to do so with her alleged co-conspirator, Harris. Such a showing is highly prejudicial and would outweigh any de minimus probative value the cocaine evidence may have. For these reasons, the evidence was improperly admitted, and we must remand for a new trial.[3]

## CONCLUSION

For the foregoing reasons, Defendant's conviction is **REVERSED**, and the case is **REMANDED** for a new trial.

---

[3]The government makes a cursory argument that even if admitting the 404(b) evidence was an error, it was harmless. An error is not harmless if it affected Defendant's "substantial rights." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). The government has sufficient evidence to convict Defendant without the cocaine evidence, but we cannot say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error." *Kotteakos*, 328 U.S. at 765.

———————————

**DISSENT**

———————————

KETHLEDGE, Circuit Judge, dissenting.     The government presented overwhelming evidence at trial that Harris and Bronson had operated a mortgage-fraud scheme through Corsmeier's title company.   The only real dispute was whether Corsmeier was in on the scheme.  She insisted that she was not—that she had instead been duped by Harris and Bronson.  To bolster that defense, Corsmeier argued that she had little incentive to participate in the scheme, because her company received the same fees from the fraudulent closings initiated by Harris and Bronson as it did from legitimate ones initiated by other mortgage brokers.   To rebut that argument, the government offered evidence that Harris had provided Corsmeier with free cocaine on four or five occasions over the three years that the scheme was in operation.  The district court admitted the evidence, cautioning the jury to consider it "only in relation to . . . Corsmeier's motives, if any, to commit the crimes charged in the indictment."  In my view, the district court did not abuse its discretion in doing so.

There is only a minor role in this case for Federal Rule of Evidence 404(b), which makes "[e]vidence of other crimes, wrongs, or acts" inadmissible "to prove the character of a person in order to show action in conformity therewith."  The government did not offer the cocaine evidence "to show action in conformity therewith"—*i.e.*, to prove that Corsmeier used cocaine on occasions other than the ones to which the evidence pertained.  Rather, it offered the evidence as proof of Corsmeier's motive to participate in the fraud, which is one of the permissible purposes listed in the rule.  *See* Fed. R. Evid. 404(b).  The evidence at issue, therefore, was not propensity evidence in the usual sense.

The majority does not dispute any of this.  It concludes instead that the cocaine evidence was irrelevant to the issue of Corsmeier's motive, primarily because Harris gave Corsmeier relatively small amounts of cocaine, and then only to improve his "relationship" with her.  But evidence is relevant if it has "any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. And I think it a basic fact of human nature—at least as commonly perceived—that a person is more likely to accommodate the request of another if the latter person has at some point given the former something of value. Otherwise, for example, vendors and professional firms would send their clients a lot fewer sports tickets and fruit baskets around the holidays. Free cocaine, for persons who like to use it, does not seem to me any different. Evidence that Harris provided Corsmeier with free cocaine thus made it more likely that she was inclined to participate in the fraud. Since "any tendency" is enough, the evidence was relevant.

For two reasons, I also think that the evidence's probative value was not substantially outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. First, Corsmeier herself injected the issue of motive into the case. This case is unlike a drug-trafficking one in which the government proffers a prior conviction to prove an element—such as knowledge or intent to distribute—that is technically at issue but in fact not disputed by the defendant. *Cf. United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994); *United States v. Jones*, 455 F.3d 800, 812 (7th Cir. 2006) (Easterbrook, J., concurring). The evidence went to a seriously contested issue here.

Second, the crimes with which Corsmeier was charged were completely different from the prior acts to which the evidence pertained. In this regard too her case is unlike the typical drug-trafficking prosecution, where the obvious fit between prior conviction and current charge can make the inference of propensity irresistible. Where, as here, the evidence concerns an act different in kind from the charged offense, the jury can better separate the legitimate purpose from the forbidden one and thus follow the limiting instruction. "Once a drug dealer, always a drug dealer" is a seductive line of reasoning. "Once a drug user, always a fraudster," less so.

I therefore believe that the district court did not abuse its discretion in admitting evidence of Corsmeier's cocaine use. Because I think that her *Youngblood* and

prosecutorial-misconduct claims fail as well, I would affirm the judgment of the district court.

For these reasons, I respectfully dissent.