NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0145n.06

No. 14-6553

**FILED**
Mar 16, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOHN HATTON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: ROGERS and DONALD, Circuit Judges; ROSE, District Judge.[*]

ROSE, District Judge. Defendant-Appellant John Hatton raises three issues subsequent to his trial and sentencing for robbing a bank and robbing a smoke shop: whether the trial court violated his substantial rights when it denied his motion for separate trials; whether the trial court committed plain error by listing facts for the jury to consider in determining the existence of a nexus to interstate commerce; and whether the trial court committed procedural error in concluding that it could not consider Hatton's spouse's cooperation in determining whether to grant a variance at sentencing. Because none of these issues warrants reversal in the context of Hatton's case, the appeal will be denied.

On Friday, October 21, 2011, at about 6:00 p.m., John Hatton attempted to rob the M & I Smoke Shop, a small convenience store in Louisville. (Doc. 230, at PageID# 1596-1599, 1616.)

---

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

Holding a revolver, Hatton ordered the proprietor, "Give me all your money or I'll kill you…." (*Id.* at PageID# 1598-99.) The shop owner wrested the revolver away from him. (*Id*. at PageID# 1600-01.) When Hatton tried to flee, the owner shot him in the leg. (*Id.*) The entire incident was captured by the store's video security cameras. (*Id.* at PageID# 1607-08.) Hatton was held on state criminal charges. (Doc. 231, at PageID# 1804, 1738.)

Three months earlier, in July 2011, Louisville Metro Police Department had begun investigating a series of armed robberies. (Doc. 156, PageID# 977-78). Eight armed robberies—some by a white female, some by a male at a location the woman had robbed, and some by a white female accompanied by a male—left the police with a suspicion that all the robberies were committed by a robbery ring connected to the white female. (*Id.* at Paged# 980). These robberies included a September 23, 2011 bank robbery by a white female and a white male a month before Hatton's arrest and a January 23, 2012 robbery of the same bank by a white female and a black male three months after Hatton's arrest.

Around January 28, 2012, a few days after the second bank robbery fitting the pattern of the white-female led ring, the police received a tip from a parent whose child went to school with the child of a white female named Jillian Wojciechowski. (*Id.* at PageID# 948-49). Specifically, the parent overheard Wojciechowski's daughter say that her mother, Wojciechowski, had been on the news for robbing a bank. (Doc. 259, PageID# 2015). The police identified the getaway car from the January 2012 bank robbery as Wojciechowski's. (Doc. 156, PageID# 950-51). Thus, Wojciechowski became the primary suspect in the robbery ring, along with her live-in boyfriend, Dean Ridge. (Doc. 231, PageID# 1766). Over the next several months, the police conducted surveillance of Ridge and Wojciechowski. (*Id.* at PageID# 1767). In March 2012,

police photographed Wojciechowski in the company of two black males, Joshua Ewing and Vincent Coleman. (Doc. 156, PageID# 900, 907; #953-56).

Police learned of Wojciechowski's and Ridge's ties to Coleman when they tracked Wojciechowski's car to an overnight stay at Coleman's wife's home. (*Id.* at PageID# 955-56). Coleman sold Wojciechowski and Ridge drugs and guns that were used in various armed robberies. (Doc. 156, PageID# 874-76).

Meanwhile, with her husband in jail, Hatton's wife, Sara, took action. In mid-April 2012, she called the Louisville Metro Police offering to help build a drug trafficking case against an acquaintance of hers, Jillian Wojciechowski. (Doc. 259, PageID# 2017-19.) Sara Hatton said she was volunteering her help to qualify her husband for a shorter sentence for the smoke shop offense. (*Id.* at PageID# 2018-19.) Sara Hatton gave no indication that her husband had requested or in any way procured her cooperation with the authorities. (*Id.*)

Investigators had Sara Hatton record telephone conversations with Wojciechowski. (Doc. 231, PageID# 1767-71.) Sara Hatton next recorded Wojciechowski selling her drugs and discussing a bank robbery. (Doc. 230, at PageID# 1689; *see also* doc. 248, at PageID# 1914-15.)

Days after Sara Hatton's undercover meeting, investigators arrested Wojciechowski and Ridge and searched their house. (Doc. 231, at PageID# 1771-73.) Wojciechowski submitted to questioning by detectives, and she confessed her role in the bank robberies. (*Id.* at PageID# 1777-80; Doc. 230, at PageID# 1682-88.)

During that first interrogation, Wojciechowski told detectives she had an accomplice in the first bank robbery: John Hatton. (Doc. 231, at PageID# 1782-83.) Wojciechowski later accused Sara Hatton of complicity as well. (Doc. 230, at PageID# 1672-73.) Hatton and Ridge had met each other about six months before the September 23, 2011 bank robbery. (Doc. 230, at

#1635).  The night before the September 23 bank robbery, the Hattons went to Wojciechowski's and Ridge's home to spend the night. (*Id.* at PageID# 1638). The four of them discussed robbing Your Community Bank, where Ridge had an account. (*Id.* at PageID# 1634, 1638, 1672).

Sara Hatton had worked in banking and gave advice on how to avoid dye packs, bait bills, and silent alarms that would be triggered by removing money from teller drawers. (Doc. 230, at PageID# 1641-43; 1673-74).  Sara explained getting money from the vault could avoid those alarms. (*Id.* at PageID# 1642).  Sara, who was pregnant, was not going along with the others on the robbery, but participated in the planning by providing her advice. (*Id.* at PageID# 1673).  The next day, Ridge drove Hatton and Wojciechowski to the Your Community Bank in Hatton's Jeep Cherokee. (*Id.* at PageID# 1635, 1670).  Ridge sat in the car as Hatton and Wojciechowski went into the bank. (*Id.* at #1646, 1674, 1676).

Multiple bank surveillance cameras captured the robbery on video. (Doc. 229, at PageID# 1558-61).  While Hatton wore a ski mask, the jurors could thus compare the male bank robber's stature and few visible features of Hatton's.

The robbers got a total of $120,721.62. (*Id.* at #1564).  Ridge drove Hatton and Wojciechowski to an empty house he was painting and split the money, one–half for Hatton, and one–half for Wojciechowski. (Doc. 230, PageID# 1646-47).

Wojciechowski and Ridge were both taken into custody on May 16, 2012. Wojciechowski said that the then-pregnant Sara Hatton had stayed at Wojciechowski's house during the robbery, and as soon as the crime was done and the robbers had split the money, Hatton rushed back to Wojciechowski's house, picked up his about-to-deliver wife, and sped to the hospital. (*Id.* at PageID# 1680.)  Sara was admitted to the maternity ward by mid-afternoon

(*id.*), and delivered a baby boy shortly after midnight. (Doc. 221, at PageID# 1458.) Ridge made similar allegations about the Hattons. (*Id.* at PageID# 1638-1642.) Sara Hatton was killed in an automobile accident in August 2012. (Doc. 229, PageID# 1514.)

That same month, Wojciechowski was charged in the initial federal indictment for twice robbing the Your Community Bank branch. (Doc. 1, PageID# 1-3). In March 2013, the grand jury returned a Superseding Indictment, adding bank robbery and firearms charges against both Hatton and Joshua Ewing for the September 2011 and January 2012 bank robberies. (Doc. 22, PageID# 46-50). The Superseding Indictment also added a charge against Hatton for the October 2011 robbery of the M & I Smoke Shop and a related firearm charge. (Doc. 22, PageID# 47-48). In May, 2013, once the investigation had identified the various participants in the robbery ring, the federal grand jury returned a Second Superseding Indictment adding a conspiracy charge against Wojciechowski, Hatton, Ridge, and Ewing for the bank robberies. (Doc. 41, PageID# 98-105). The conspiracy charge alleged that Ridge was the getaway driver in the bank robberies; that Hatton and Wojciechowski entered the bank on September 23, 2011, and robbed it; that Joshua Ewing was recruited for the second bank robbery because Hatton was unable to participate due to his arrest for the M & I Smoke Shop robbery; that Joshua Ewing and Wojciechowski entered the bank on January 23, 2012 and robbed it; and that the conspiracy covered the time span between September 23, 2011, and January 23, 2012. (*Id.* at #98-100).

Hatton had been held in state custody for the M & I Smoke Shop robbery, but those charges were dismissed in favor of federal prosecution, and he was transferred to federal custody with the return of the Second Superseding Indictment. (Doc. 51; Doc. 172, at PageID# 1222). Shortly before Hatton's scheduled trial, the grand jury returned a Third Superseding Indictment

that corrected the date on which Hatton robbed the M & I Smoke Shop, while retaining the bank robbery charge, both with corresponding firearms charges. (Doc. 165, at PageID# 1171-78).

All the other defendants either agreed to plea agreements or were tried separately. (Doc. 94, at PageID# 32; Doc. 111, at PageID# 417). That left Hatton as the last defendant to be tried.

The judge granted a motion to sever the conspiracy to commit bank robbery. (Doc. 257, PageID# 1976-77). This left Hatton to be tried only on the substantive robbery and gun charges stemming from the M & I Smoke Shop and Your Community Bank robberies. (Doc. 153, PageID# 634).) On November 11, 2013, Hatton moved to sever the M & I Smoke Shop counts from the bank robbery counts "pursuant to Rule 8(a) and/or Rule 14." (Doc. 173, PageID# 1225). Hatton asserted that the conditions for joinder under Rule 8(a) were not satisfied. He argued that "[t]here is no logical connection between these alleged crimes." (*Id.*). In a Rule 14 argument, Hatton further contended he would be highly prejudiced by the joinder, because the joinder would "preclude[] the Defendant from testifying on his own behalf as to one charge but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither." (*Id.* PageID# 1225-26). On the first day of Hatton's trial, the judge denied Hatton's motion to sever. (Doc. 186, PageID# 1209).

At the end of the trial, before closing arguments began, the judge completed the final jury instructions and distributed copies to counsel. (Doc. 231, at PageID# 1799-1814.) Among the instructions would be this statement about the Hobbs Act's interstate commerce element:

> In determining whether the robbery of the M & I Smoke Shop affected interstate commerce, you should consider that a portion of the goods sold by the M & I Smoke Shop are shipped from outside the state of Kentucky and sold in this state, that a portion of the proceeds of sales or goods from the M & I Smoke Shop are used to

> purchase additional goods that are shipped in from outside of the state of Kentucky, that payments for products sold by the M & I Smoke Shop are routinely transmitted to businesses located outside the state of Kentucky, and that the M & I Smoke Shop lost sales as a result of the robbery.

(Doc. 189, at PageID# 1281.) In closing argument, the prosecutor drew the jurors' attention to this instruction, urging them to consider the factors the judge would list. (Doc. 231, PageID# 1826.)

The prosecutor's closing argument was also marked by an effort to turn Hatton's actions in the smoke shop robbery into proof that he had committed the bank robbery. "[W]hat the defendant wants you to believe is that he's an armed robber because his attorney told you that in his opening statement," the prosecutor said. (Doc. 231, PageID# 1818.) "No question about that. He is an armed robber because he went into the [M & I] Smoke Shop, he was armed with a gun, things went bad, and he wound up getting shot while he was taking the money." (*Id.*) Therefore, reasoned the prosecutor, any claim that Hatton was not an armed bank robber "doesn't make any sense." (*Id.*) The prosecutor explained:

> If you are willing to risk everything, if you are willing to risk your safety, your freedom, the well-being of your family, your month-old son, … if you are willing to do that all for a couple hundred dollars at a smoke shop, you are going to be more than willing and more than ready to do it at a bank for a hundred thousand dollars. . . . If your bar is set so low that you'll pull a gun on a business owner and take everything out of his cash register, then you will go to a bank and you'll pull a gun . . . because it takes about the same amount of time, and the take and the result and the benefit is so much greater.

(*Id.*) "Armed robbers are armed robbers," the prosecutor insisted: "It doesn't matter . . . who the money belongs to. Here's a gun, give me the money, as simple as that." (*Id.* at PageID# 1818-19.) "If you are willing to cross that line for a couple hundred bucks," he told the jury, "you are

willing to cross that line for a hundred thousand. There's no question about that." (*Id.* at PageID# 1819.) The jury found Hatton guilty of both robberies and both firearm charges. (Doc. 231, at PageID# 1859.)

At sentencing, the two corresponding firearms convictions generated the greater portion of the prison term on Hatton's presentence report: thirty-two years, to be served consecutively with whatever punishment was assigned for the two robberies. (Doc. 221, at PageID# 1460.) As to the two robberies, the sentencing guidelines placed the advisory punishment range at 78-97 months. (*Id.*) The district court reduced Hatton's criminal history category after finding that Hatton's criminal history category overrepresented the seriousness of his prior offenses, which consisted of several automobile-license violations, a petty theft, and a drug-possession misdemeanor. (Doc. 259, PageID# 2022; see Doc. 221, at PageID# 1455-57.) This reduced Hatton's advisory range to 70-87 months. (Doc. 259, at PageID# 2023.)

The defense asked the district court for a variance below the advisory range under 18 U.S.C. § 3553 in consideration of the significant aid that Sara Hatton had contributed to the Government's investigation. (Doc. 248, at PageID# 1920-21.) The court refused to consider the request. "I think what [the defendant is] asking for is essentially a 5K downward departure," the court said. (Doc. 259, PageID# 2016.) "I don't see it distinguished from the kind of departure which is within the province of the United States to move for," the court continued. (*Id.*) "[W]ithout a motion of the United States," concluded the court, "I think that I can't consider the help of one spouse, whatever that help might have been, as lessening the sentence of the other spouse." (*Id.*; *see also id*. at PageID# 2022.)

The court imposed a prison term of 454 months (37 years and 10 months) on December 23, 2014. (Doc. 252, at PageID# 1952). This appeal began with the filing of notice on December 30, 2014. (Doc. 254, at PageID# 1961).

## A.    Misjoinder of Charges

Hatton first appeals the denial of his motion to sever the M & I Smoke Shop from the bank robbery counts "pursuant to Rule 8(a) and/or Rule 14." (Doc. 173, at PageID# 1225). A district court's refusal to sever the charges is subject to harmless error review. See *United States v. Lane*, 474 U.S. 438, 449 (1986). Thus, we may grant relief only if the error "affects substantial rights." *Id*. "[A]n error involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *Id*. (quotation omitted). Factors which can show that misjoinder is harmless include the overwhelming evidence of guilt, the fact that limiting instructions were given to the jury, and the fact that evidence concerning the misjoined counts would have been admissible in separate trials absent joinder. *Id.* at 450.

Federal Rule of Criminal Procedure 8(a) allows joinder of counts in an indictment if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are connected with or constituted parts of a common scheme or plan." Rule 8(a) is construed in favor of joinder, but failure to meet the requirements of the rule may constitute misjoinder as a matter of law. *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). The allegations in the indictment determine whether joinder was proper. *Id.* "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment." *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011) (quoting *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002).

Here, the allegations on the face of the indictment were of a similar, if not the same, character. The second count alleges that Wojciechowski and Hatton "did by force, violence and intimidation, take from the person and presence of another, money…." PageID# 1173-74. The fifth count alleges that "Hatton,…by robbery,…did knowingly and unlawfully take money belonging to the M & I Smoke Shop, from a person…, against his will by means of actual and threatened force, violence, and fear of immediate injury to his person." PageID# 1175. One charge alleges taking money "by force, violence and intimidation," while the other alleges taking money "by means of actual and threatened force, violence, and fear of immediate injury." The two charges are sufficiently similar to be joined in one trial.

The instant case is nearly identical to *United States v. Cobb*, 397 F. App'x 128 (6th Cir. 2010), which affirmed joinder of charges that the defendant violated the Hobbs Act and three and a half months later robbed a bank. The first count of the indictment in that case charged that "the defendant…did unlawfully obstruct and affect commerce…by robbery…in that the defendant…did unlawfully take and obtain approximately $2,640 in United States currency belonging to [a restaurant engaged in interstate commerce], from a person having lawful custody of such currency, against his will by means of actual and threatened physical violence to his person in furtherance of such robbery." Indictment, *United States v Cobb*, 2:07-cr-186, R. 19, PageID# 34 (S.D. Ohio Sept. 6, 2007). The second count charged that "defendant…by force, violence and intimidation did take from the presence of an employee of Huntington National Bank, money belonging to and in the care, custody and control of [the bank],… and, in so doing, did cause to be put in jeopardy the life of employees of [the bank] by means and use of a dangerous weapon, that is a handgun." *Id.*

The opinion in *United States v. Cobb* focused on evidence adduced at trial as a basis for affirming the joinder: "[i]n each robbery, Cobb approached a female employee, threatened to kill her, and brandished what appeared to be a gun. In addition, he wore similar or perhaps the same clothes." 397 F. App'x at 136. Similarities akin to those in *Cobb* were adduced in trial against the defendant in this case: an employee was approached, threatened with a gun, by defendant who was wearing a hoodie. The major difference was that in the bank robbery Defendant acted with others, while in the smoke shop robbery he acted alone.

Looking to the evidence adduced at trial, however, ignores the mandate to determine "[w]hether joinder was proper under Rule 8(a)…by the allegations on the face of the indictment." *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011) (quoting *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002). There was no proffer to the trial judge as to whether the evidence at trial would support joinder, nor is this the practice generally. As in *Cobb*, the district judge looked to the face of the indictment and saw similar crimes. Joinder was proper and should not be affirmed or vacated in hindsight based upon what is learned at trial.

Finally, Defendant failed to show prejudice. Defendant's alleged prejudice was that, with the death of his wife, no one was left to testify in support of his alibi for the bank robbery, that he was with his wife who was about to give birth. Defendant reasons that if he were to have taken the stand regarding his alibi, he would have been subject to questioning regarding the smoke shop robbery. This ignores, however, that Defendant's only defense to the smoke shop robbery was whether he affected goods in interstate commerce, as he was filmed committing the robbery, and being shot and apprehended on premises. Any questions on that point would have only yielded what everyone in the courtroom knew: he committed the smoke shop robbery.

Defendant was as free to take the stand regarding his alibi for the bank robbery as he would have been had the two counts been tried separately.

Moreover, even if there had been error, the error was harmless, primarily because there was overwhelming evidence, and also because evidence in the misjoined trials would have been admissible in the separated trial for proof of motive. The testimony of both Ridge and Wojciechowski that Hatton was the male robber at the September 23, 2011 bank robbery, combined with other evidence, was overwhelming.

Because the charges in the indictment describing the smoke shop robbery and the bank robbery were similar, joining them in one trial was proper. Even if it was improper joinder, because the evidence of each crime could have been used in each trial, any error was harmless.

## B.     The Hobbs Act Interstate Commerce Instruction

Next, Hatton appeals the jury instruction regarding the interstate commerce element of the Hobbs Act charge. Because Hatton did not object, our review is for plain error. To succeed under plain error review, Hatton "must show that the instruction was (1) error (2) that was plain, (3) that affected substantial rights and (4) that, if uncorrected, would 'seriously affect[ ]the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Osborne*, 673 F.3d 508, 511 (6th Cir. 2012)(citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

The Hobbs Act, 18 U.S.C. § 1951(a), provides in part that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . shall be fined . . . or imprisoned . . . ." When a robbery is of a business, to prove a Hobbs Act robbery case, the United States must prove that the defendant's robbery had at least a *de minimis* effect on interstate commerce. Proof that the robbery is from a business that buys inventory from an in-state distributor, which, in turn, buys its products from

-12-

out of state, meets that *de minimis* standard. *United States v. Davis*, 473 F.3d 680, 681-82 (6th Cir. 2007). An attempted robbery of a business in interstate commerce is likewise prohibited under the Hobbs Act. *United States v. Brown*, 959 F.2d 63, 64-65, 67-68 (6th Cir. 1992).

At trial, Hatton contested whether there was a nexus to interstate commerce sufficient to support the Hobbs Act charge. Hatton, however, did not object to the trial court's instructing the jury:

> In determining whether the robbery of the M & I Smoke Shop affected interstate commerce, you should consider that a portion of the goods sold by the M & I Smoke Shop are shipped from outside the state of Kentucky and sold in this state, that a portion of the proceeds of sales or goods from the M & I Smoke Shop are used to purchase additional goods that are shipped in from outside of the state of Kentucky, that payments for products sold by the M & I Smoke Shop are routinely transmitted to businesses located outside the state of Kentucky, and that the M & I Smoke Shop lost sales as a result of the robbery.

(Doc. 189, at PageID# 1281.)

It is usually error for a trial court to determine contested issues of fact for a jury. See *United States v. White Horse*, 807 F.2d 1426, 1430 (8th Cir. 1986). However, taking a factual determination away from a jury will not automatically result in reversal. *Johnson v. United States*, 520 U.S. 461, 470 (1997).

The judge's instruction amounted to error, in that it supplanted the jury's fact-finding role, and that error was plain. However, Hatton must show that the forfeited error affected his substantial rights. *Johnson*, 520 U.S. at 467 (materiality was factual question for jury to decide, but conviction affirmed under plain-error analysis where judge, not jury, decided whether statement to grand jury was material). The forfeited error requires reversal "only if the error

seriously affect[s] the fairness, integrity or public reputation of the proceedings." *Johnson*, 520 U.S. at 467, quoted in *Osborne*, 673 F.3d at 513.

The proof of the interstate-effect clearly falls within the *de minimis* standard. It is not a miscarriage of justice to affirm Hatton's Hobbs Act conviction, even if the jury instructions were flawed.

**C.      Authority to Grant at Variance Based Upon Third-Party Cooperation**

Finally, Hatton appeals the denial of his motion for a variance at sentencing based upon his wife's cooperation with authorities. In his sentencing memorandum and hearing, Hatton urged the district judge to impose a downward variance in the guidelines portion of his sentence for reasons that included his wife's "significant and unselfish assistance" to the police in their investigation. (Doc. 248, PageID# 1920-21). Hatton argued that the district judge could consider the cited grounds for a downward variance under 18 U.S.C. § 3553(a) because "the minimum Guideline punishment –70 months – [was still] too long to comply with § 3553(a)'s directive that federal punishments be 'sufficient, but not greater than necessary' to satisfy the need for retribution and deterrence." (Doc. 248, PageID #1917). The United States did not move for a downward departure under USSG §5K1.1 or for a lower-than-mandatory-minimum sentence under 18 U.S.C. § 3553(e). The court declared, "Without a motion of the United States, … I think that I can't consider the help of one spouse, whatever that help might have been, as lessening the sentence of the other spouse." (*Id.*; *see also id*. at PageID# 2022.)

In reviewing sentencing under the guidelines, "[w]hen the district court misunderstands its own authority, ordinarily grounds exist warranting remanding the case for resentencing."

*United States v. Kamper*, 748 F.3d 728,743 (6th Cir. 2014). But if the error is harmless, the defendant is not necessarily entitled to resentencing. *Id.*

There is not evidence that Hatton solicited his wife to cooperate. No court within the Sixth Circuit has recognized that "third-party" or "surrogate" substantial assistance warrants a substantial assistance motion under USSG §5K1.1 or 18 U.S.C. § 3553(e), much less that a sentencing court may consider such assistance as a sentencing factor under § 3553(a). While *United States v. Blue*, 557 F.3d 682, 686 (6th Cir. 2009), suggests § 3553(a) empowers a sentencing judge to take a defendant's substantial assistance into account, even without a motion by the United States, *Blue* does not say that a sentencing court may consider unsolicited "third-party" cooperation absent a substantial-assistance motion from the United States.

Importantly, nothing in the record shows that John Hatton was in any way responsible for Sara Hatton's cooperation with the Louisville Metro Police Department. In those cases that recognize third-party cooperation as grounds for a below-guidelines sentence, the defendant must have played "some role in instigating, requesting, providing or directing the assistance." *Lander*, 900 F. Supp. 2d at 937, 940 (quoting *United States v. Doe*, 870 F. Supp. 702, 708 (E.D. Va. 1994); *United States v. McMillion*, 528 F. Supp. 2d 620, 624 (S.D. W.Va. 2007)). In this case, Hatton did not instigate, request, or direct Sara Hatton to assist the police in any aspect of its criminal investigation.

We **AFFIRM** the judgment of the district court.

**BERNICE BOUIE DONALD, concurring in part and dissenting in part.** I concur in the majority's decision to affirm the district court's judgment with respect to the jury instruction and Sara Hatton's cooperation. However, I dissent with respect to the majority's conclusion that the robbery charges were not misjoined and that any error was harmless.

I.

The majority concludes that joinder of the two robberies was proper because the indictment demonstrates that the robberies were "of the same or similar character." *See* Fed. R. Crim. P. 8(a). Our Court has not extensively discussed what it means to be "of the same or similar character." While proselytizing that a reviewing court must only analyze the face of an indictment, *see United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002), we have often considered far more than the words contained between its four corners. *See United States v. Cobb*, 397 F. App'x 128, 136 (6th Cir. 2010) (finding that a Hobbs Act robbery and two armed bank robberies were of similar character based on the revelation at trial of a similar modus operandi); *United States v. Deitz*, 577 F.3d 672, 692-93 (6th Cir. 2009) (reviewing whether the defendant affirmatively conveyed his withdrawal of a conspiracy such that the conspiracy charge was misjoined); *United States v. Wilkins*, 253 F. App'x 538, 541 (6th Cir. 2007) (noting that both charges were pursuant to 18 U.S.C. § 922(g) and thus were properly joined); *United States v. Tran*, 433 F.3d 472, 477-78 (6th Cir. 2006) (concluding that two arson charges were of similar character because the modes of operation were similar; they involved overlapping evidence and witnesses; and the fires were within seven miles of each other and targeted buildings owned by the same individual); *United States v. Bibby*, 752 F.2d 1116, 1121 (6th Cir. 1985) (determining that tax counts were not of the same or similar character because the underlying conduct regarding each count was unrelated); *United States v. Rox*, 692 F.2d 453, 454 (6th Cir. 1982)

(finding that the charges were of the same or similar character because they arose from the defendant's decision to abuse her official state position to circumvent immigration laws).

What this Court says in theory does not translate to what it does in practice—and for good reason. The joinder of "similar but unrelated charges can create[] a heightened risk to the defense by making it more difficult for a defendant to testify on his own behalf for one charge but not for another, by permitting the jury to hear evidence that would be inadmissible in separate trials, and by creating a risk that the jury will use the evidence of separate crimes cumulatively." 1A Charles Alan Wright, Federal Practice & Procedure § 143 (4th Ed. 2015). Furthermore, as the Ninth Circuit explains, "[d]epending on the level of abstraction (e.g., offenses involving dishonesty, offenses involving an intent to defraud), offenses of a 'like class' might encompass a host of otherwise unrelated offenses, making an 'uncomplicated' similar character inquiry tantamount to no meaningful inquiry." *United States v. Jawara*, 474 F.3d 565, 577-78 (9th Cir. 2006). *But see United States v. Coleman*, 22 F.3d 126, 133 (7th Cir. 1994) (concluding that "Rule 8(a) is a rather clear directive to compare the offenses charged for categorical, not evidentiary, similarities" and that a Federal Rule of Criminal Procedure 14 motion ameliorates any unfairness or prejudice as a result of joining same or similar charges).

Other circuits explicitly consider appropriate, limited factors that can be inferred from the face of an indictment. *See, e.g.*, *Jawara*, 474 F.3d at 577 (reviewing "temporal proximity, physical location, modes of operation, identity of the victims, likelihood of evidentiary overlap, and the like, to the extent that they can be gleaned from the indictment"); *United States v. Edgar*, 82 F.3d 499, 503 (1st Cir. 1996) (listing various considerations such as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred" (quoting *United States v.*

*Taylor*, 54 F.3d 967, 973 (1st Cir. 1995)).  I would adopt such an approach, as it is consistent with our precedent.

## II.

Whether reviewing only the indictment or also considering broader factors, I would find that the robberies in this case were misjoined.  Staying true to this Court's articulated standard, I start with the face of the indictment.  The majority relies on this Court's decision in *Cobb* to demonstrate that the elements of a Hobbs Act robbery and a bank robbery are "of the same or similar character" within the meaning of Rule 8.  However, *Cobb* itself does not rely on similarities in the indictment.  *See* 397 F. App'x at 136.  Instead, it concludes that the robberies were of similar character based on the robberies' mode of operation, which was *not* in the indictment:  it was revealed at trial.  *See id.*

Regardless, I do not believe that compelling similarities between the two robberies can be gleaned from the indictment in this case.  The indictment alleges that the Your Community Bank robbery involved other individuals—namely, Wojciechowski, Ridge, and Ewing.  It contends that Hatton and Wojciechowski concealed their identities, brandished firearms, and ordered bank employees to give them money.  Finally, it claims that Hatton and Wojciechowski left the bank, where Ridge was waiting with a vehicle to whisk them away from the crime scene and elude police detection.  Regarding the Smoke Shop robbery, the indictment alleges that Hatton interfered with commerce and interfered with the movement of articles in commerce by unlawfully taking money from a person with a threat of violence.  It does not allege that there were any accomplices.  It also does not allege that Hatton attempted to conceal his identity or that he had a getaway driver.  Furthermore, the original conspiracy count explains that Hatton "was unable to participate [in a subsequent bank robbery tied to the conspiracy] after he was

arrested for a robbery that occurred on October 26, 2011." R. 41, PageID #99. Importantly, it does *not* indicate that the Smoke Shop robbery was related to the conspiracy to rob banks. Accordingly, I would find the differences between each count in the indictment material, such that the Smoke Shop robbery and the Your Community Bank robbery were misjoined.

Additionally, if I am true to our precedent and review other factors that can be gleaned from the indictment, I would also conclude that these robberies were misjoined. Unlike in *Cobb*, the robberies here did not share the same modus operandi. *See Cobb*, 397 F. App'x at 136 (concluding that joinder of a bank robbery and a Hobbs Act robbery was proper because the modus operandi—where the defendant approached a female, threatened a murder/suicide if she did not cooperate, and wore the same or similar clothing—was the same or similar within the meaning of Rule 8(a)). The Your Community Bank robbery involved a getaway driver; an accomplice; ski masks; inside knowledge of dye packs, bait bills, and silent alarms; reconnaissance of the bank to ensure that no customers were present; and a premeditated plan to raid the vault once inside. The bank employees noted that the robbers did not threaten them and spoke little. This painstakingly planned and executed robbery stands in stark contrast to what occurred at the Smoke Shop, which was a simple grab-and-go operation. While robbing the Smoke Shop, Hatton wore a hoodie and sunglasses, had to wait until a customer left, and threatened the owner with violence. There was no allegation of accomplices, getaway drivers, masks, or a plan of any kind.

The case before us is therefore most similar to *Bibby*, which is in accord with the Ninth Circuit's concerns about joining otherwise unrelated offenses. *See Jawara*, 474 F.3d at 577-78. In *Bibby*, this Court found misjoinder when an indictment charged multiple tax fraud counts against a defendant. 752 F.2d at 1121. Count 17 referred to the defendant's failure to report a

kickback as income on his taxes. *Id.* Counts 18 through 20 alleged "only that [the defendant] claimed excessive deductions for attorney's fees on his 1977, 1979, and 1980 tax returns." *Id.* The *Bibby* Court noted that "[t]he fraudulent deduction of attorney's fees had absolutely nothing to do with the defendants' overall scheme to defraud." *Id.* Even though the counts were of a similar character, this Court concluded that Counts 18 through 20 were misjoined because the underlying conduct for those counts was unrelated to the underlying conduct for Count 17. *Id.* I would apply the same reasoning here: even though the counts are "of the same or similar character" in that both are robberies, they are nevertheless misjoined because the robberies themselves are not related per the face of the indictment.

Furthermore, none of our other considerations for misjoinder are present here. There were no common victims, *see Tran*, 433 F.3d at 477-78; there was no likelihood of evidentiary overlap, *see Deitz*, 577 F.3d at 692-93, *Tran*, 433 F.3d at 477-78; there was only one similar witness who testified briefly to a few facts and explained that he did not investigate the Smoke Shop robbery, *see Tran*, 433 F.3d at 477-78; and finally, these charges did not fall under the same statute, *see Wilkins*, 253 F. App'x at 541.

In sum, I would conclude that judicial economy—the driving force behind joinder—was not furthered in this case. *See United States v. Richardson*, 161 F.3d 728, 734 (D.C. Cir. 1998). These robberies, therefore, were misjoined.

## III.

The majority also concludes that Hatton has not demonstrated prejudice in this case and that any error was harmless. I disagree.

A. Substantial evidence

I believe that the record does not contain substantial evidence of Hatton's guilt in relation to the Your Community Bank robbery.[1] The government argues that three key pieces of evidence demonstrate Hatton's guilt: (1) Ridge's and Wojciechowski's testimony; (2) Sara Hatton's advice on how to rob a bank undetected; and (3) the similarity between the male robber's physical characteristics and Hatton's physical characteristics. On the other hand, the defense argues that it was Ridge who robbed the bank with Wojciechowski, not Hatton.

First, Wojciechowski and Ridge testified that Hatton was an accomplice to the Your Community Bank robbery as part of their plea deal for reduced sentences. They changed their stories as time went on. Wojciechowski suggested that Hatton was involved when she was first arrested, but she denied that Sara Hatton and Ridge were also involved. She eventually changed her story before she testified before the grand jury. Likewise, Ridge denied his involvement when he was first arrested, but he changed his story to match Wojciechowski's before he testified before the grand jury. Accordingly, a jury might not view these individuals as the most trustworthy sources of information about what occurred during the Your Community Bank robbery.

Ridge's testimony also reveals a major inconsistency. He stressed that semi-automatic pistols were used during the Your Community Bank robbery. Detective Jim Clark testified that the male robber used a revolver. Wojciechowski was never asked what type of gun was used. This inconsistency is crucial because the police found a revolver at Wojciechowski and Ridge's

---

[1] The facts actually developed at trial paint a much different picture than those articulated by the majority. For example, there was no evidence of eight bank robberies, Vincent Coleman, or a drug trafficking case against Wojciechowski. I limit my review to the facts before the jury. *See United States v. Ramirez,* 133 F. App'x 196, 203 (6th Cir. 2005) (reviewing the "substantial evidence introduced against [the defendant] at trial").

home. Thus, Ridge had access to the same type of gun used in the robbery, consistent with the defense's theory that it was Ridge who robbed the bank with Wojciechowski.

Second, the government argues that Sara Hatton's participation in the robbery was evidence of Hatton's guilt. However, even assuming it is true that she imparted information about dye packs, bait bills, and silent alarms, her participation does not show that Hatton was the one who entered the bank. Moreover, Detective Clark testified that Sara Hatton called him to help him in his investigation of the Your Community Bank robbery—not Wojciechowski's alleged drug trafficking scheme. In fact, Detective Clark's testimony concerns *only* the Your Community Bank robbery. To a jury, it might seem contradictory that Sara Hatton, who was attempting to help her husband receive a lower jail sentence for the Smoke Shop robbery, would assist the police in implicating her husband in the Your Community Bank robbery.

Lastly, the government believes that the male robber's physical features match Hatton's physical features. Testifying at trial, the three bank employees all generally described the same characteristics: a tall, Caucasian male with a slim build who was wearing work boots, jeans, gloves, a hooded sweatshirt, and a mask over his face. None of them could positively identify the perpetrator because of the mask that he wore, but they did notice various attributes. Alicia Shelman testified that he had blonde or red eyebrows. She also testified that she did not notice if the male robber had a limp or sway and stated that he moved fairly quickly. Dwayne Livers testified similarly. Amanda Hewlett, who let the male robber into the bank's vault, noted that he seemed to sway when he walked, but that he did not have a limp. She also stated that he was not that quick.

The defense asked the jury to conclude that this male robber was Ridge and not Hatton. It seems at least plausible. Ridge, who is Caucasian, testified that he is 5' 11"—not 5' 8" as the

prosecutor asserted in his closing argument—and weighed about 150 pounds at the time of the robbery. Livers testified that he was 5' 10" and that the male perpetrator was taller than him. The record contains no evidence of Hatton's height or build, although the jury did have an opportunity to view Hatton while he was standing. Furthermore, there was conflicting testimony about whether Hatton walks with a noticeable limp. In sum, both men were tall and had slender builds, in line with the bank employees' descriptions.

Moreover, other evidence at trial does not distinguish Hatton as the robber. Ridge had a bank account at the Your Community Bank location that was robbed, while Hatton did not. Both Wojciechowski and Ridge spoke of using Hatton's green Jeep Cherokee as the getaway car, but the prosecutor never demonstrated that Hatton owned a green Jeep Cherokee. The fingerprints and DNA recovered from the Your Community Bank robbery did not indicate who the perpetrator was. Finally, when Wojciechowski was first arrested, she told the police that Hatton took his share of money with him in the computer bag that the male robber had with him. However, when the police searched her and Ridge's home, they found two computer bags similar to the ones used during the robbery.

Based on the foregoing, I do not believe that the government has demonstrated that there was *substantial* evidence at trial indicating that Hatton is guilty of the Your Community Bank robbery. The evidence shows that, like Hatton, Ridge had access to the type of gun used during the robbery and, like Hatton, knew how to avoid bank alarms courtesy of Sara Hatton's knowledge. Both men have nearly the same physical characteristics. It seems particularly troubling to differentiate between Hatton and Ridge based on Hatton's "at least blonde-looking eyebrows," as the prosecutor described them. Lastly, other evidence at trial could point to either Ridge or Hatton, such as the computer bags found at Ridge's home. Reviewing the record in its

totality, it certainly does not seem that the government "overwhelming[ly]" demonstrated Hatton's guilt in relation to the Your Community Bank robbery. *Lane*, 474 U.S. at 449.

B. Limiting instructions

The district court gave limiting instructions to the jury, explaining that they must differentiate between the evidence for each robbery in their deliberations. The instructions stated that "the fact that the defendant has been charged with several crimes is no evidence of guilt, and this should not influence your decision in any way. It's your duty to separately apply the evidence as it relates to each charge and return a separate verdict as to each one."

These instructions, however, did not specifically address the propensity and prejudicial issues that Hatton faced as a result of the joinder of both robberies. *See United States v. Holloway*, 740 F.2d 1373, 1377 n.5 (6th Cir. 1984). "While a limiting instruction can minimize the prejudicial impact of prior criminal acts, it is not 'a sure-fire panacea for the prejudice resulting from needless admission of such evidence.'" *United States v. Clay*, 667 F.3d 689, 696 (6th Cir. 2012) (quoting *United States v. Haywood*, 280 F.3d 715, 724 (6th Cir. 2002)). We have acknowledged that "[e]vidence of other bad acts undoubtedly has a powerful impact on a juror's mind." *Id.* The risk that this may have occurred here is, in my mind, too great.

C. Admissibility at separate trials

The majority concludes that each robbery would be admitted at separate trials under a theory of motive. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (quoting *Haywood*, 280 F.3d at 720). This Court has previously defined motive "as something within a

person . . . that incites him to action, or the consideration of [an] object influencing a choice or prompting an action." *United States v. Corsmeier*, 617 F.3d 417, 420 (6th Cir. 2010) (quoting *Serro Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 792 (6th Cir. 2007) (internal quotation marks omitted)). In other words, "motive must indicate a causal relationship between the prior bad act and the charged criminal act." *United States v. Vance*, 871 F.2d 572, 578 (6th Cir. 1989) (Gibson, J., dissenting).

I am hesitant to conclude that evidence of the Smoke Shop robbery would be admissible in the Your Community Bank robbery trial under a theory of motive. Such a conclusion wanders perilously close to propensity evidence—*i.e.*, once one commits a robbery, then one is motivated to keep committing robberies. *See United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979) (explaining that "[s]omething more than repeated performance of the same class of crimes is required in evidencing a 'design' or 'plan' which, if proved, may raise the inference that the accused was the perpetrator of the crime in question"). Furthermore, the district court explicitly excluded evidence that the robberies were motivated by Hatton's addiction to prescription pills. S*ee, e.g.*, *United States v. Washam*, 468 F. App'x 568, 572 (6th Cir. 2012) (admitting evidence of a different robbery than the one at issue based on a motive to obtain funds to sustain the defendant's drug addiction).

Our precedent has applied previously allowed evidence of a prior robbery in a robbery case under a theory of identity. *See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). However, there, the prior robbery was properly admitted because there was a common "signature," "pattern," or "modus operandi," and the Court noted that these were "unlike two completely unrelated robberies." *See Perry*, 438 F.3d at 648. The Smoke Shop robbery would not help a jury identify Hatton as the male robber in the Your Community Bank Robbery. Thus,

the stark differences between the robberies in this case lead me to believe that the Smoke Shop robbery would not be admissible, probative evidence on a material issue for a trial concerning the Your Community Bank robbery. *See Corsmeier*, 617 F.3d at 420.

D.  Prejudicial effect

A Rule 404(b) analysis also requires a determination of "whether the unfair prejudicial impact of the evidence substantially outweighs its probative value." *Clay*, 667 F.3d at 696; *see* Fed. R. Evid. 403. Based on my analysis of whether the robbery charges would be admitted at separate trials, it seems that the Smoke Shop robbery would not be probative of the Your Community Bank robbery.

Furthermore, the Smoke Shop robbery *was* improperly used as propensity evidence at this trial. The prosecutor's closing clearly uses the Smoke Shop robbery to suggest that Hatton committed the Your Community Bank robbery:

> So the question is what makes sense? Apparently, what the defendant wants you to believe is that he's an armed robber because his attorney told you that in his opening statement. No question about that. He is an armed robber because he went into the M&I Smoke Shop, he was armed with a gun, things went bad, and he wound up getting shot while he was taking the money.
>
> But he's not an armed bank robber. That doesn't make any sense. If you are willing to risk everything, if you are willing to risk your safety, your freedom, the well-being of your family, your month-old son, if you are willing to do all that, then you are willing to go into a bank and – if you are willing to do that all for a couple hundred dollars at a smoke shop, you are going to be more than willing and more than ready to do it at a bank for a hundred thousand dollars.
>
> It's risk versus reward. If your bar is set so low that you'll pull a gun on a business owner and take everything out of his cash register, then you will go to a bank and you'll pull a gun, along with somebody else, and you'll clean out the vault because it takes about the same amount of time, and the take and the result and the benefit is so much greater.
>
> Armed robbers are armed robbers. It doesn't matter what the target is. It doesn't matter whose money -- who the money belongs to. Here's a gun, give me the money, as simple as that. If you are willing to cross that line for a couple

> hundred bucks, you are willing to cross that line for a hundred thousand. There's no question about that.

PageID# 1818-19; *see* Fed. R. Evid. 404(b)(1) ("Evidence of a crime . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *United States v. Clemis*, 11 F.3d 597, 600 (6th Cir. 1993). It goes without saying that such language is highly prejudicial.

E. Conclusion

Taken as a whole, I would find that reversal is warranted because there was "actual prejudice," in that the misjoinder "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Lane*, 474 U.S. at 449 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The evidence at trial was not substantial; the limiting instructions were not sufficient; it is unlikely that the robberies would be admitted at separate trials; and the Smoke Shop robbery was used as propensity evidence in this case. Thus, I believe that I can say "with fair assurance . . . that the judgment was substantially swayed by the error." *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001).

IV.

For the reasons articulated above, I respectfully dissent from the majority's decision that the two robbery counts were properly joined and that any error was harmless.